United States District Court
District of Massachusetts – Boston

**Aaron Barrows**    )  Case No. 00-10331-PBS
**Petitioner,**      )
**v.**          )
**United States of America** )
**Respondent**      )

### Memorandum of Law in Support of Petitioner
### Aaron Barrows U.S.S.G. 18 § 3582 (c) (2)
### Motion to Reduce Sentence

Under 18 § 3582 (c) (2):
"In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994 (o) upon motion of the defendant or Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment after considering the factors set forth in section 3553 (a) to the extent that they are applicable policy statements issued by the Sentencing Commission."

  The Petitioner has requested this court to take into account the Booker/Crawford violations, and reduce the Petitioner time accordingly. U.S. v. Booker, 543 U.S. _ (2005) Crawford v. Washington, 158, L Ed. 2d. 177.

A.         History

  The Petitioner pleads guilty to counts 1 through 9 of a nine count Indictment. (See Indictment) Under 21 U.S.C. § 841 (a) (1) Possession with Intent to Distribute, and Distribution of Cocaine Base. Under the SRA of 1984 where the guidelines were mandatory. The guideline range determined by the Probation Department was level 31 Criminal History Category VI (imprisonment range 188 to 235 months). A two point

increase when it was determined by the Probation Department that Petitioner was a "career offender". In the Petitioner's indictment there was no actual drug type or amount given. The question of drug quantity and amount are not properly listed on the indictment and is a constitutional issue addressed in the U.S. Supreme Court case(s), <u>Neder v. United States</u>, 527 U.S. 1, <u>Richardson v. United States</u>, 119 S. Ct. 1707 1710 (1999). The pleading requirement which held the "indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted <u>U.S. v Reese</u>, 92 U.S. 214, 23 L. Ed 565 (1875). Any indictment missing an "Essential Element" is a legal nullity and any conviction based on thereon *must* automatically be vacated. <u>United States v. Castillo</u> U.S. 120 S. Ct. 2090. The failure to include and "essential element" in the indictment is a Fundamental Jurisdictional defect that renders any conviction on a defective indictment. Accordingly a grand jury's failure to return a proper indictment is a jurisdictional defect that is not waived; even by a guilty plea, <u>U.S. v. Bell</u>, 22 F. 3d. 274 11th Cir. (1994).

   Petitioner's two prior "convictions" do not meet the requirement to be sentenced as a career offender under 4 B1.1 of the U.S.S.G. The Petitioner was based on two prior convictions, one of which does not qualify under U.S.S.G. 4 B1.1, the District Court erred in accepting the (Probation Departments) analysis that Petitioner Barrows possessed the required two prior felony convictions.

   The Petitioner's prior convictions for counterfeit substance under Massachusetts General Law (Statute) clearly states:

> **94C § 32 G - Any person who knowingly or intentionally creates, distributes, dispenses or possesses with intent to distribute or dispense**

**a counterfeit substance shall be punished by imprisonment in a jail or a house of correction for not more than one year or by fine less than $250, no more than $2500, or both such fine and imprisonment.**

In <u>U.S. v. Hester</u> 917 F 2d. 1083 8th Cir (1990), the court made clear to the point "the issue is not the amount of time, or sentence imposed, but the ability of a sentence in excess of greater than one year." Under Massachusetts General Law, the maximum term of confinement is for not more than one year. (MGL 94C § 32G) Under U.S.S.G. 4 B1.1 a felony conviction is defined as an offense "punishable by imprisonment for a term *exceeding* one year regardless of whether the offense is specifically designated as a felony and regardless of actual sentence imposed." The relationship to the recent <u>Booker</u> ruling concerns the lack of any jury determinations involving applicable enhancing factors. This issue, made more specific in the recent <u>Shepard</u> ruling dealing in particular with "prior convictions" and their application to the ACCA enhancements. The relation or application of <u>Shepard</u> to the present case (which was a burglary case) is the statutory meaning of the prior charge as addressed on page 9 of the opinion. Here we have counterfeit substance in the prior charge with a particular meaning and specific sentence applicable to the charge. As with <u>Shepard</u>, also Massachusetts statute, <u>Shepard</u> requires the Court in necessarily admitted elements…is limited to the terms of the charging document…Id at p. 12 IV. <u>U.S. v. Shepard</u>, 544 U.S._(2005) Again the Petitioner was enhanced without no beyond-a-reasonable doubt requirements, in this matter without a jury determination, a lacking determination of a clear and convincing showing of a Sixth amendment violation per <u>Apprendi/Blakely/Booker/Shepard</u>.

The court should take into account the proper corresponding guideline range of 18 (at least 100 grams but less than 200 grams of cocaine) criminal history category V (51 to 63 months). Not base offense level of 32. U.S.S.G. § 2D1.1 (c) (4). The reasoning is very simple. The Petitioner plead guilty to 132.7 grams of cocaine base. After the bright line drawn in Apprendi ruling, there can be no doubt that drug type and amount are now and were at the time of the Petitioner's sentencing, elements of the crime Petitioner was being charged and were not left in the domain of preponderance of the evidence to be determined by the Judge; the court also clarified its prior ruling handed down in Apprendi that a maximum a judge could impose after finding additional facts but the maximum he can impose without any additional finding, additional facts based on a jury verdict alone, admitted to by the defendant. Apprendi v. New Jersey 550 U.S. 466 12 S. Ct. (2000), Blakely v. Washington, 542 U.S. _, (2004) U.S. v. Booker, 543 U.S. _(2005)

The Guidelines do not offer a definition of "cocaine" and "cocaine base" until 1993, the defining amendment reads:

> **"Cocaine base", for the purpose of this Guideline, means "crack". "Crack" is the street name for *a* form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rock-like form.**

U.S.S.G. § 2D1.1; U.S.S.G. App C. Amendment 487 effective Nov. 1, 1993, Amendment 487 is properly treated as a clarification rather than a substantial change, giving the Petitioner the benefit of that clarification. The District Court's enhanced (100 to 1) sentence for crack was not warranted under the Booker supra. The Petitioner's indictment charged him with possessing with intent to distribute "cocaine base". The

Government's laboratory analysis reported the substance as "cocaine base and caffeine". (See DEA Report, Exhibit 1 through 7) United States v. Garret, 189 F 3d. 610 7th Cir (1999) the circuit stated that "cocaine base" and "crack" are not interchangeable terms. So merely saying "cocaine base" known as "crack", which the government said doesn't constitute applying the enhanced penalty when the word "crack" which the Government said doesn't constitute applying the enhanced penalty when the word "crack" is a street term used to describe one of many forms of "cocaine base". (See Amendment 487)

United States v. James, 78 F. 3d 851 (1996), the defendant presented expert testimony that there are several ways of preparing cocaine base, only *one* of which will yield crack. In United States v. Munoz-Realpe, 21 F 3d 375 (1994), the Eleventh Circuit addressed the impact of 1993 amendment no. 487 and held that other forms of cocaine base that are not crack be treated as regular cocaine for sentencing purpose. With this in mind, the Court held that because the Government failed to prove by a preponderance of evidence that the form of cocaine base sold by the Defendant was crack, it was an error to apply the enhanced sentence.

Petitioner prays that this Honorable Court will take into account that:

1) The proper drug type and amount wasn't in the indictment.

2) No reasonable-doubt jury determination was made that there should be an enhanced sentence for crack (100 to 1 ratio).

3) The cocaine base contained "caffeine" not the two elements cocaine hydrochloride and sodium bicarbonate.

The Munoz-Realpe case held that other forms of cocaine base that are not crack should be treated as regular cocaine for sentencing purposes. Since the recent Supreme Court ruling in Booker and Shepard it has become even more relevant that

actual drug type and amount be determined by a jury. The prejudice suffered by the Petitioner is actually due to the fact that without this required determination, a sentence based on anything was in fact imposed. Further bias would have entered the sentencing scheme being the P.S.R. report and the prosecution would have the undue influence on the judge who would be "stuck" with only government favorable information in front of her/him. Information is used instead of facts being without some sort of unanimous decision by a jury. The sentence rendered could not be one based on law and facts, rather of opinion and personal wants, neither of which would be in favor of the defendant.

B.                          Ex Post Facto Clause Violation

From the inception of the Guidelines in November 1987 until the Booker decision of 01/12/05, the ex-post facto principles in the Due Process clause bar the court from imposing a sentence greater than the "statutory maximum" in the guideline range. The range as calculated only on the facts proven to the jury beyond-a-reasonable doubt of admitted by the defendant.

    Section 1.B1.11 states:

> **A sentencing court to use the Guideline Manual in effect on the date that a defendant is sentenced unless the court determines that "use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex-post facto clause of the United States Constitution, in which case the court should use the version of the guidelines in effect on the date the offense of conviction**

**was committed**.

The ex-post facto clause of the constitution applies equally to the Legislature and Judiciary.

The Supreme Court has made clear "that limitations on ex-post facto judicial decision making are inherent in the notion of "Due Process". <u>Rogers v Tennessee</u>, 523 US 451, 456 (2001); US Const Art I § 9, CL 3. As the Court explained in <u>Boure v. City of Columbia</u>, 378 US 347, 353-354 (1964), Id.. Legislature is barred by the Ex-Post Facto clause from passing such a law, it must follow that [the Court] is barred by the Due Process clause from achieving precisely the same result by Judicial construction "Id at 353-54.

The ex-post facto principles came into play because the remedial in <u>Booker</u>, through its interpretation of the SRA, effectively raised the maximum penalty that may be imposed for federal crimes by eliminating the mandatory nature of the guideline, as <u>Booker</u> states, under the mandatory federal guideline system that was in effect before <u>Booker</u>, the "statutory maximum" sentence was the top of the applicable guideline range.

From the inception of the Guidelines until <u>Booker</u>, every circuit recognizes that because of the mandatory nature of the Guidelines, any Amendment that would raise a Defendant's guideline range could not be applied to the conduct occurring before the Amendment took effect without violating Ex-Post Facto principle. (See 1B1.11)

  <u>**US v Harotunian**</u>, **920 F2d 1040 (1st Cir 1990)**

  <u>**US v Young**</u>, **932 F2d 1035 (2nd Cir 1991)**

  <u>**US v. Kupp**</u>, **951 F2d 521 (3rd Cir 1991)**

US v Mirrow, 925 F2d 779 (4th Cir 1991)

US v Suarez, 911 F2d 1016 (5th Cir 1990)

US v Nagi, 947 F2d 211 (6th Cir 1990)

US v Seacoit, 15 F3d 1380 (7th Cir 1997)

US v Bell, 941 F2d 1445 (8th Cir 1993)

US v Sweeten, 933 F2d 765 (9th Cir 1993)

US v Smith, 930 F2d 1450 (10th Cir );

US v Wurthy, 915 F2d 1514 (11th Cir 1990);

US v Lam Kwung-Kah, 924 F2d 298 (DC Cir 1991)

* See also U.S.S.G. § 1b1.11 (c) (1), Supra.

All these decisions were based on **Miller v Florida**, 482 US 423 (1987) where the Supreme Court held that reiterated Calder v Bull, 3 US 326 (1798), that the Ex-Post Facto concerns are by Id [every law that changes the punishment and inflicts a greater punishment, that the law annexed to the crime, when committed.]

The remedial decision in Booker, by excising the provision that had made the guidelines mandatory (18 USC § 3553 (c) (1)), raised the maximum from the top of the guideline range to the maximum allowed under the statute defining the offense. The judicial interpretation of the SRA expands, the criminal penalty for all Federal crimes, and cannot be applied retroactively to the detriment of the Defendants in cases involving crimes committed before Booker.

Before Booker, all Defendants were on notice by virtue of the plain statutory language and the unanimous case law that the Guidelines agree binding, and thus, absent argumentative circumstances in the Guidelines. The judges could not sentence

above the top of the applicable guideline range. Booker struck the binding language and in point so raised the maximum sentence that could be imposed as Miller makes clear, Congress could not have made such a change to the Guidelines retroactive by virtue of the Ex-Post Facto clause, 422, US at 434-35 and the courts cannot make such a change retroactive by virtue of the Due Process clause. See US v. Marks, 430 US 188 (1977). 18 § 3582 (c) (2) does not trigger habeas provisions of A.E.D.P. or Schirro v Summerli's retroactivity trap.

C.    Conclusion and Appropriate Remedy

Wherefore Petitioner was enhanced argumentatively 14 levels without a true required determination a sentence of anything based on anything was in fact imposed. The distinction must be made on the cocaine form, being that courts are now able to sentence to lesser terms. Especially those dealing with crack cocaine cases or as claimed "base". Terms equal with or less than powder cocaine terms now can be given. See United States v Peterson, 143 F Supp. 2d 569 (E.D.Va 2001); United States v Smith, D.C. E.D.W. No. 02 Cr 163 (March 2005).

The application of Booker as well as Shepard v United States in this matter relates to how the prior convictions were improperly used to enhance the present sentence. Without the actual known "drug type" done under a required jury determination there could not be a true and correct sentence imposed. The Shepard case dealt with burglary and generic burglary while here we deal with "cocaine base" and "crack" which has different sentencing scheduled for equal amounts by weight.

Without an actual "knowing" of drug type this argument would go right back to the indictment and plea which neither could be valid. The only way this deficit in

sentencing, due to extreme prejudice, could be resolved would be by a shorter sentence in line with "facts", which in this case have not been established beyond any reasonable doubt.

In this case the error is plain; to be plain it must be clear and obvious. See Fed. Rule Cr. Proc. Rule 52 (b), 18 U.S.C.A., US v Gore, 154 F3d 34, 35, 43 (2nd Cir 1998). US v Olano, 507 US at 734, 113 S. Ct. 1770; the foregoing has made that point very clear and undisputable, being the record is truly void of any jury determination. The Constitutional deprivation of provisions created this deficit, which has been clearly and concisely shown in most part by lack of or any record showing the meeting by the A.U.S.D.A. or the court of specified and required Constitutional provisions being.

Jurisdiction of this motion and memorandum under 18 § 3582 (c) (2) is properly vested in this court before Honorable Judge P. Saris. This motion <u>should not</u> be constructed as a 28 USC § 2255 or anything other than its original 18 § 3582 (c) (2). Id. 18 § 3582 (c) (2) reads:

> **"in the case of Defendant who has been sentenced to a term of imprisonment based on a sentencing range that has been lowered by the Sentencing Commission pursuant to 28 USC 994 (o) upon Motion of the Defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment after considering the factors set forth in section 3553 (a) to extent that they are applicable, policy**

**statements issued by the Sentencing Commission."**

Mr. Barrows (Petitioner) prays this Honorable court will take the foregoing into consideration in any decisions it makes concerning this matter. That considering the amount of time already spent in prison, any substantial reduction or release would be an appropriate by the Court. Thank you.

Respectfully submitted,

*Aaron Barrows*

Aaron Barrows, pro-se
FCI McKean
PO Box 8000
Bradford, PA 16701

**U.S. Department of Justice**
**Drug Enforcement Administration**

**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED**

| 1. HOW OBTAINED (Check) | | | 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|---|---|
| [X] Purchase  [ ] Seizure  [ ] Free Sample [ ] Lab. Seizure  [ ] Money Flashed  [ ] Compliance Sample (Non-Criminal) [ ] Internal Body Carry  [ ] Other (Specify) | | | CC-99-0218 | | |

| 4a. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE |
|---|---|---|
| Pembroke MA | 05-02-2000 | [redacted] |

| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL [ ] Case No. OR [ ] Seizure No. No. | 7. DATE PREPARED 05-02-2000 | 8. GROUP NO. Task Force Two |
|---|---|---|---|

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | 13. Seized | 14. Submitted | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| 42 | | Cocaine | A clear plastic bag containing a yellow rock like substance believe to be crack cocaine. | | 31.0 | 540.00 |

16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG? [X] NO (included above)  [ ] YES

REMARKS:
Exhibit #42 was purchased by [redacted] form Aaron BARROWS AKA "STEVE" on 05-02-2000 in the town of Pembroke. Exhibit #42 had a gross weight of 31.0 Grams and was field tested by TFA [redacted] with positive results for cocaine. [redacted] maintained care and custody of exhibit #42 until it was submitted to the NERL via RMRRR.

**LABORATORY EVIDENCE RECEIPT REPORT**

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|
| 1 | | |

22. SEAL  [ ] Broken  [X] Unbroken

**LABORATORY REPORT**

25. ANALYSIS SUMMARY AND REMARKS

Exhibit #42 [redacted].

Gross Wt. = 31.1 g

Net Wt. = 6.3 g

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | 29. Strength | 30. Measure | 31. Unit | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| 42 | 135320 | cocaine base | 50 | % | | 3.1 g | 5.8 g |

34. ANALYST (Signature)   35. TITLE   36. DATE COMPLETED 19[redacted]

LOCATION [redacted]

DEA Form - 7 (Sept. 1995)   Previous edition dated 4/90 may be used until stock is exhausted.   4 - Hqs. File (PINK)

**U.S. Department of Justice**
**Drug Enforcement Administration**

Read instructions on Reverse before completing.

**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED**

| 1. HOW OBTAINED (Check) [X] Purchase [ ] Seizure [ ] Free Sample [ ] Lab. Seizure [ ] Money Flashed [ ] Compliance Sample (Non-Criminal) [ ] Internal Body Carry [ ] Other (Specify) | 2a. FILE NO. CC-99-0218 | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|
| 4a. WHERE OBTAINED (City, State/Country) Pembroke MA | 4b. DATE OBTAINED 05-04-2000 | 5. FILE TITLE | |
| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL [ ] Case No. OR [ ] Seizure No. No. | 7. DATE PREPARED 05-02-2000 | 8. GROUP NO. Task Force Two |

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| #43 | | Crack Cocaine | A clear plastic bag containing 10 smaller clear plastic bags containing a yellow rock like substance believed to be crack cocaine. | 31.1 Grams | | $450.00 |

**16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG?** [X] NO (included above) [ ] YES (if Yes, enter exhibit no. and describe original container fully)

**REMARKS:**
Exhibit #43 was purchased from Aaron BARROWS in the town of Pembroke on 05-04-2000 by TFA ▓▓▓▓▓▓ maintained care & custody of exhibit #43 until it was placed in the overnight vault at DEA Boston for safekeeping where it will remain until retrieved by TFA ▓▓▓▓ and sent to the NERL via RMRRR. ▓▓▓▓▓▓ field tested exhibit #43 with positive results for cocaine and had a gross weight of 31.1 Grams

**LABORATORY EVIDENCE RECEIPT REPORT**

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|

**22. SEAL** [ ] Broken [X] Unbroken

**LABORATORY REPORT**

**25. ANALYSIS SUMMARY AND REMARKS**

Exhibit #43 contains cocaine base and caffeine.

Gross Wt. = 31.4 g

Net Wt. = 4.8 g

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 43 | 135471 | cocaine base | 50 | % | | 4.4 g | 4.2 g |

| 34. ANALYST (Signature) | 35. TITLE | 36. DATE COMPLETED 07/21/00 |
|---|---|---|
| | | 39. LAB. LOCATION NEW YORK |

DEA Form-7
(Sept. 1995)

Previous edition dated 4/90 may be used until stock is exhausted.

4- Hqs. File (PINK)

10

U.S. Department of Justice
Drug Enforcement Administration

Read Instructions on Reverse before completing.

REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED

| 1. HOW OBTAINED (Check) | | | 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|---|---|
| [X] Purchase [ ] Seizure [ ] Free Sample [ ] Lab. Seizure [ ] Money Flashed [ ] Compliance Sample (Non-Criminal) [ ] Internal Body Carry [ ] Other (Specify) | | | CC-99-0218 | | |

| 4a. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE |
|---|---|---|
| Braintree MA | 05-09-2000 | |

| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL [ ] Case No. OR [ ] Seizure No. No. | 7. DATE PREPARED 05-09-2000 | 8. GROUP NO. Task Force Two |
|---|---|---|---|

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| # 44 | | Crack Cocaine | 1 clear plastic bag containing 16 smaller clear plastic bags containing an off white substance believed to be crack cocaine. | | 33.0 Grams | $600.00 |

16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG?   [X] NO (included above)   [ ] YES (if Yes, enter exhibit no. and describe original container fully)

REMARKS:
Exhibit #44 was purchased from Aaron BARROWS AKA STEVE in the town of Braintree MA on 05-09-2000 for $600.00. ▓▓▓▓▓ maintained care and custody of exhibit #44 until it was placed in the overnight vault at DEA Boston for safekeeping where it will remain until retrieved and sent to the NERL via RMRR by ▓▓▓▓▓ Exhibit #44 had a gross weight of 33.0 grams and was field tested with positive results for cocaine by ▓▓▓▓▓

19. NO. PACKAGES
22. SEAL  [ ] Broken  [X] Unbroken
25. ANALYSIS SUMMARY

Exhibit #44 contains cocaine base and caffeine.

Gross Wt. = 33.3 g

Net Wt. = 6.9 g

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 44 | 135470 | cocaine base | 49 | % | | 3.3 g | 0.0 g |

| 34. ANALYST (Signature) | 35. TITLE FORENSIC CHEMIST | 36. DATE COMPLETED 07/__/00 |
|---|---|---|
| | TITLE LABORATORY DIRECTOR | 39. LAB. LOCATION NE ▓▓▓ |

DEA Form - 7 (Sept. 1995)    Previous edition dated 4/90 may be used until stock is exhausted.    Hqs. File (PINK)

**U.S. Department of Justice**
**Drug Enforcement Administration**

Read Instructions on Reverse before completing.

**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED**

| 1. HOW OBTAINED (Check) | | | 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|---|---|
| [X] Purchase [ ] Seizure [ ] Free Sample [ ] Lab. Seizure [ ] Money Flashed [ ] Compliance Sample (Non-Criminal) [ ] Internal Body Carry [ ] Other (Specify) | | | CC-99-0218 | | |

| 4a. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE |
|---|---|---|
| Braintree MA | 05-17-2000 | |

| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL [ ] Case No. OR [ ] Seizure No. | 7. DATE PREPARED | 8. GROUP NO. |
|---|---|---|---|
| | | 05-17-2000 | Task Force Two |

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | 13. Seized | 14. Submitted | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| 45 | | Crack cocaine | Ex 45 is a clear plastic bag containing a yellow rock like substance believed to be crack cocaine. | 53.2 Grams | | $1350.00 |

**16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG ?** [X] NO (included above) [ ] YES (if Yes, enter exhibit no. and describe original container fully)

**REMARKS:**
Exhibit #45 was purchased by ▓▓▓▓ from Aaron BARROWS AKA "STEVE" in the town of Braintree on 05-17-2000 for $1350.00. ▓▓▓▓ maintained care and custody of exhibit #45 until it was placed in the overnight vault at DEA Boston where it remained until retrieved by ▓▓▓▓ and sent to the NERL via RMRRR. Exhibit #45 had a gross weight of 53.2 Grams and was field tested positive for cocaine by ▓▓▓▓.

**LABORATORY EVIDENCE RECEIPT REPORT**

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|
| | | |

| 22. SEAL |
|---|
| [ ] Broken [X] Unbroken |

**LABORATORY REPORT**

**25. ANALYSIS SUMMARY AND REMARKS**

Exhibit #45 contains cocaine base and caffeine.

Gross Wt. = 53.3 g

Net Wt. = 27.7 g

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 45 | 135065 | cocaine base | 41 | Z | | 11.3 g | 26.9 g |

| 34. ANALYST (Signature) | 35. TITLE FORENSIC CHEMIST | 36. DATE COMPLETED 07/31/00 |
|---|---|---|
| | TITLE LABORATORY DIRECTOR | 39. LAB. LOCATION NEW YORK |

DEA Form - 7 (Sept. 1995)    Previous edition dated 4/90 may be used until stock is exhausted.    Hqs. File (PINK)

**U.S. Department of Justice**
Drug Enforcement Administration

Read Instructions on Reverse before completing.

**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED**

| 1. HOW OBTAINED (Check) [X] Purchase [ ] Seizure [ ] Free Sample [ ] Lab. Seizure [ ] Money Flashed [ ] Compliance Sample (Non-Criminal) [ ] Internal Body Carry [ ] Other (Specify) | 2a. FILE NO. CC-99-0218 | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|
| 4a. WHERE OBTAINED (City, State/Country) Braintree MA | 4b. DATE OBTAINED 05-31-2000 | 5. FILE TITLE | |
| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL [ ] Case No. OR [ ] Seizure No. No. | 7. DATE PREPARED 05-31-2000 | 8. GROUP NO. Task Force Two |

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY 13. Seized | 14. Submitted | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| 47 | | Crack Cocaine | A clear plastic bag containing a yellow rock like substance believed to be crack cocaine. | | 53.2 Grams | $1350.00 |

16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG?  [X] NO (included above)  [ ] YES (if Yes, enter exhibit no. and describe original container fully)

REMARKS:
Exhibit #47 was purchased by ▓▓▓ from Aaron BARROWS in the town of Braintree on 05-31-2000. ▓▓▓ maintained care & custody of exhibit #47 until it was placed in the Overnight Vault at DEA Boston where it remained until retrieved by ▓▓▓ and sent to the NERL via RMRRR. Exhibit #47 had a gross weight of 53.2 Grams.

| 19. NO. PACKAGES 1 | 20. RECEIVED FROM (Signature & Date) | NAME and TITLE |
|---|---|---|
| 22. SEAL [ ] Broken [X] Unbroken | | |

**LABORATORY REPORT**

25. ANALYSIS SUMMARY AND REMARKS

Exhibit #47 ~~contains cocaine base and caffeine.~~

Gross Wt. = 53.4 g

Net Wt. = 27.7 g

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION 29. Strength | 30. Measure | 31. Unit | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| 47 | 135634 | cocaine base | 41 | % | | 11.3 g | 16.7 g |

| 34. ANALYST (Signature) | 35. TITLE FORENSIC CHEMIST | 36. DATE COMPLETED 07/26/00 |
|---|---|---|
| | TITLE LABORATORY DIRECTOR | 39. LAB. LOCATION NEW YORK |

DEA Form-7 (Sept. 1995)    Previous edition dated 4/90 may be used until stock is exhausted.    4 H js. File (PINK)

12

**U.S. Department of Justice**
**Drug Enforcement Administration**

REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED

1. HOW OBTAINED (Check): [X] Purchase  [ ] Seizure  [ ] Free Sample  [ ] Lab. Seizure  [ ] Money Flashed  [ ] Compliance Sample (Non-Criminal)  [ ] Internal Body Carry  [ ] Other (Specify)

2a. FILE NO.: CC-99-0218
2b. PROGRAM CODE:
3. G-DEP ID:

4a. WHERE OBTAINED: Boston MA
4b. DATE OBTAINED: 05-31-2000
5. FILE TITLE:

6a. REFERRING AGENCY (Name):
6b. REFERRAL: Case No. / Seizure No.
7. DATE PREPARED: 05-31-2000
8. GROUP NO.: Task Force Two

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | 13. Seized | 14. Submitted | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| 48 | | Crack Cocaine | A clear plastic bag containing a yellow rock like substance believed to be crack cocaine. | | 53.4 Grams | $1300.00 |

16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG? [X] NO (included above)  [ ] YES

REMARKS: Exhibit #48 was purchased by ▮▮▮▮ from Aaron BARROWS in the city of Boston on 05-31-2000. ▮▮▮▮ maintained care & custody of exhibit #48 until it was placed in the Overnight Vault at DEA Boston where it remained until retrieved by ▮▮▮▮ and sent to the NERL via RMRRR. Exhibit #48 had a gross weight of 53.4 Grams.

19. NO. PACKAGES:
20. RECEIVED FROM (Signature & Date):
21. Print or Type NAME and TITLE:
22. SEAL: [ ] Broken  [X] Unbroken
24. Print or Type NAME and TITLE:

**LABORATORY REPORT**

25. ANALYSIS SUMMARY AND REMARKS

Exhibit #48 contains cocaine base and caffeine.

Gross Wt. = 53.4 g

Net Wt. = 27.6 g

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | 29. Strength | 30. Measure | 31. Unit | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| 48 | 135235 | cocaine base | 44 | % | | 12.1 g | 26.6 g |

34. ANALYST (Signature):
35. TITLE: FORENSIC CHEMIST
36. DATE COMPLETED: 07/26/0_
TITLE: LABORATORY DIRECTOR
39. LAB. LOCATION: NEW YORK

DEA Form - 7 (Sept. 1995)    Previous edition dated 4/90 may be used until stock is exhausted.    4 - Hqs. File (PINK)

U.S. Department of Justice
Drug Enforcement Administration

Read Instructions on Reverse before completing.

REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED

| 1. HOW OBTAINED (Check) [X] Purchase  [ ] Seizure  [ ] Free Sample  [ ] Lab. Seizure  [ ] Money Flashed  [ ] Compliance Sample (Non-Criminal)  [ ] Internal Body Carry  [ ] Other (Specify) | 2a. FILE NO. CC-99-0218 | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|
| 4a. WHERE OBTAINED (City, State/Country) Boston MA | 4b. DATE OBTAINED 06-12-2000 | 5. FILE TITLE | |
| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL [ ] Case No. OR [ ] Seizure No. No. | 7. DATE PREPARED 06-12-2000 | 8. GROUP NO. Task Force Two |

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| 49 | | Crack Cocaine | 1 clear plastic bag containing a yellow rock like substance believed to be crack cocaine. | | 52.6 Grams | $1200.00 |

16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG?  [X] NO (included above)  [ ] YES (if Yes, enter exhibit no. and describe original container fully)

REMARKS:
Exhibit #49 was purchased form Aaron BARROWS AKA "STEVE" by ▮▮▮▮▮ on 06-12-2000 in the city of Boston MA for $1200.00. Exhibit #49 had a gross weight of 52.6 Grams and remained in the care and custody of ▮▮▮▮▮ until it was placed in the overnight vault at DEA Boston for safekeeping where it remained until retrieved by ▮▮▮▮▮ and sent to the NERL via RMRRR.

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|
| 22. SEAL [ ] Broken [X] Unbroken | LSF 06/21/00 | LABORATORY R... |

25. ANALYSIS SUMMARY AND REMARKS

Exhibit #49 contains cocaine base and caffeine.

Gross Wt. = 52.7 g

Net Wt. = 27.3 g

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 49 | 155446 | cocaine base | 42 | % | | 11.4 g | 26.4 g |

| 34. ANALYST (Signature) | 35. TITLE | 36. DATE COMPLETED 08/17/00 |
|---|---|---|
| | | 9. LAB. LOCATION NEW YORK |

DEA Form - 7
(Sept. 1995)

Previous edition dated 4/90 may be used until stock is exhausted.

Hqs. File (PINK)