**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| AARON BARROWS, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. 05-10361-PBS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |
| | ) | |

## GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION

The United States of America hereby files its Response to the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (the "§ 2255 Motion") filed by Petitioner Aaron Barrows ("Barrows"). For all of the reasons set forth below, Barrows's § 2255 Motion should be allowed in part and denied in part. Specifically, Barrows sets forth one valid claim in his motion – *i.e.*, that he was improperly sentenced as a career offender under § 4B1.1 of the United States Sentencing Guidelines (the "USSG"). The remainder of Barrows's § 2255 Motion lacks merit and should be summarily dismissed.

## I.    BACKGROUND

### A.    Criminal Action Against Barrows (Crim. No. 00-10331-PBS)

On September 7, 2000, a federal grand jury returned a nine-count indictment against Barrows, charging him with possession with intent to distribute, and distribution of, cocaine base, also known as "crack cocaine," on nine occasions between October 1999 and June 2000, in violation of 21 U.S.C. § 841(a)(1). See **Exhibit 1** (Indictment). The indictment further alleged that Counts Five through Nine involved 5 grams or more of "crack cocaine," triggering the 5-year mandatory minimum (and 40-year maximum) set forth in 21 U.S.C. § 841(b)(1)(B). Id. The total amount of "crack cocaine" charged in the indictment was 132.7 grams.

On September 13, 2000, Barrows was arrested and the indictment was unsealed. Barrows retained private counsel for his defense -- Attorney Rudolph Miller of Jamaica Plain. On March 7, 2000, Barrows entered into a written Plea Agreement with the government, in which he agreed that 132.7 grams of cocaine base, also known as "crack cocaine," was attributable to him. See **Exhibit 2** (Plea Agreement) at ¶ 3(A). The government agreed to recommend a period of imprisonment at the low end of the Sentencing Guideline range as determined by the Court, subject to any mandatory minimum term of imprisonment. Id. at ¶ 4(a). The Plea Agreement did not address application of the career offender provisions, USSG § 4B1.1 and § 4B1.2.

On March 27, 2001, this Court conducted a Rule 11 hearing, at which Barrows pled guilty to Counts 1 -- 9 of the indictment. At the hearing, the attorney for the government (AUSA Joseph LaPlante) noted the possibility that Barrows might qualify as a career offender under USSG § 4B1.1. See **Exhibit 3** (Tr. of Rule 11 Hr'g) at 21 (noting, in response to Court's inquiry regarding likely issues at sentencing, "[i]t's unclear to both of us at this point as to whether the defendant will be a career offender. It's possible.").

After the Rule 11 hearing, the U.S. Probation Office ("Probation") interviewed Barrows and prepared a Presentence Report. Probation determined that the following guidelines applied:

| | |
|---|---|
| Base Offense Level: | 32 (based on (50-150 grams of "crack cocaine") |
| § 3E1.1 Adjustment: | -3 |
| Total Offense Level: | 29 |
| Criminal History Category: | V (based on 11 criminal history points) |

-------------------------------------------------------------------------------------------

140 -- 175 months

See PSR at ¶¶ 47-54, 58-66. Probation then determined, however, that Barrows did, in fact, qualify as  a career offender under USSG § 4B1.1. This determination was based on the following two

2

predicate convictions:

> (1)  <u>Possession of a Counterfeit Substance with Intent To Distribute</u> – Barrows pled guilty in the West Roxbury District Court in August 1995 and was sentenced to a 1-year term of probation; in February 1996, he was found to have violated the terms of his probation and was sentenced to 6 months in the House of Correction.  <u>See</u> PSR at ¶ 60; **Exhibit 4** (copy of state conviction);

> (2)  <u>Armed Robbery, Armed Assault with Intent to Rob, and Assault with Dangerous Weapon</u> – Barrows pled guilty in the Middlesex Superior Court in May 1997 and was sentenced to 3 years and 1 day in state prison, to be followed by a 3½-year term of probation. <u>See</u> PSR at ¶ 61.

Upon finding that the career offender provision applied, Probation revised its Sentencing Guideline calculation as follows:

| | |
|---|---|
| Base Offense Level: | 34 (based on USSG § 4B1.1(B)) |
| § 3E1.1 Adjustment: | -3 |
| Total Offense Level: | 31 |
| Criminal History Category: | VI (based on USSG § 4B1.1) |

-------------------------------------------------------------------------------------------------

188 -- 235 months

<u>See</u> PSR at ¶¶ 55-57, 67, 121.

Neither party submitted any objections to the PSR.  <u>See</u>  PSR at 32 (noting lack of objections from government and/or defense).  (The initial PSR was revised simply to add some additional information received from Barrows's relatives).  Nor did either party submit a sentencing memorandum to the Court.  Armed with the PSR and a copy of the parties' Plea Agreement, the Court held a sentencing hearing on September 20, 2001.

The Court began the sentencing hearing by confirming that neither party filed a sentencing memorandum nor any motions for departure.  <u>See</u> **Exhibit 5** (Tr. of Sentencing Hr'g) at 2-3.  The Court then asked the parties if they had any objections to the PSR.  <u>Id</u>. at 3.  After each party confirmed its belief that the USSG calculations in the PSR were accurate, the Court concluded:

> [s]o the career offender provisions kick in.  So, it's 31 and six, the total offense level of 31.... which puts him in at 188 to 235 months of imprisonment, 48 to 60 months range of supervised release, $15,000 to $14 million file and a $900 special assessment.  Is that right?

Id.  All parties -- including the government, the defense, and Probation -- agreed to this calculation.

Id. at 3-4.

Before the Court imposed a sentence, defense counsel made an oral motion for a downward departure based on an argument that Barrows's "criminal history may be somewhat overstated by the fact that he's now placed into a career offender's status."  See **Exhibit 5** (Tr. of Sentencing Hr'g) at 7.  The government agreed to a downward departure to Criminal History Category V, which rendered a Sentencing Guideline range of 168 -- 210 (TOL 31 / CHC V), and recommended a sentence of 168 months, the low-end of that range.  See id. at 12-13.  The Court granted the downward departure, and imposed the following sentence:  168 months imprisonment, 48 months of supervised release, no fine, and a $900 special assessment.  See id. at 19.  Judgment entered on September 25, 2001.  See **Exhibit 6** (Judgment).

## B.     Barrows's Appeal (01-2372 (1st Cir.))

On September 26, 2001, the day after this Court entered the final judgment and conviction, Barrows filed an appeal with the First Circuit Court of Appeals.  On February 1, 2002, however, the First Circuit dismissed the appeal for lack of prosecution.  See **Exhibit 7** at Feb. 1, 2002 Order.  In August and September 2004, Barrows wrote the First Circuit, seeking to reopen his direct appeal.  The First Circuit treated Barrows's letters as a Motion to Recall Mandate, which was denied on September 21, 2004.  See id. at Dec. 6, 2004 Order.  On October 14, 2004, Barrows filed  another Motion to Recall Mandate, which the First Circuit denied on December 6, 2004.  See id.

### C.    Barrows's First § 2255 Motion (Civil Action No. 03-10217-PBS)

On or about January 12, 2003, Barrows wrote a letter to this Court, stating that he was "coerced" into pleading guilty by his defense attorney, who failed to "argue the Pre-Sentence Report as well as the crack enhancement" and "killed [his] direct appeal saying he would handle it." Barrows solicited help from the Court in filing a 2255 petition.

On January 31, 2003, Barrows filed a *pro se* 2255 petition, which was docketed as Civil Action No. 03-10217-PBS.  In his petition, Barrows stated, *inter alia,* that his attorney "never checked to see if defendant was career offender" and "never made objections to P.S.I." even after Barrows explained that he did not believe that he was a career offender under the guidelines because the "career offender enhancement doesn't apply in this case when defendant [sic] prior convictions do not stand up to the provisions as stated in U.S. Guidelines."

On or about March 18, 2003, however, Barrows inexplicably wrote a letter to the Court seeking permission to withdraw his petition.  This Court allowed Barrows's request and entered an Order of Dismissal on March 26, 2003.  See **Exhibit 8** (Order of Dismissal).

### D.    The Instant § 2255 Motion

In or about November 2004, Attorney Charles Rankin contacted the U.S. Attorney's Office, stating that Barrows had contacted him to review his case, and that it appeared to Attorney Rankin that Barrows had been incorrectly sentenced as a career offender.  The U.S. Attorney's Office retrieved the case file from archives and began investigating this claim.  On  February 23, 2005, Barrows filed the instant *pro se* § 2255 Motion, which raises two claims:

(1)    Ground One:  Barrows claims that this Court erred "by sentencing [him] as a Career Offender" because he "does not meet the requirement to be sentenced as a career offender."  See § 2255 Motion at 5.

(2)    Ground Two: Barrows also raises a Blakely/Booker claim, asserting that the "drug type/drug quantity [was] not properly listed in the Indictment" and the "100 to 1 ratio was improperly applied in this case." See id.

With respect to the one-year statute of limitations applicable to § 2255 motions, Barrows argues that the one-year bar should be waived because he is "factually innocent" of being a career offender. See § 2255 Memo at 3.

For all of the reasons set forth below, Barrows's § 2255 Motion should be allowed in part and denied in part. Specifically, Barrows sets forth one valid claim in his motion – i.e., that he was improperly sentenced as a career offender under USSG § 4B1.1. The remainder of Barrows's § 2255 Motion lacks merit and should be summarily dismissed.

## II.    § 2255 STANDARD OF REVIEW

In pertinent part, 28 U.S.C. § 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. In other words, Section 2255 "provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-27 (1962)).

The petitioner bears the burden of establishing the need for relief under § 2255. David, 134 F.3d at 474. Specifically, a petitioner must establish that his conviction was imposed in violation of the Constitution or laws of the United States involving a "fundamental defect which inherently

6

results in a complete miscarriage of justice," or "an omission inadvertent with the rudimentary demands of fair procedure." Hill, 368 U.S. at 428; United States v. Addonizio, 442 U.S. 178, 185 (1979). To obtain relief under § 2255, a petitioner "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).

In light of this heavy burden of proof, evidentiary hearings are the rare exception, not the rule. See United States v. McGill, 11 F.3d 233, 225 (1st Cir. 1993); United States v. Mala, 7 F.3d 1058, 1062 (1st Cir. 1993); United States v. Tardiff, 969 F.2d 1283, 1286 (1st Cir. 1992); United States v. DeCologero, 821 F.2d 39, 44 (1st Cir. 1987). As stated by the First Circuit, "in most situations, motions can be 'heard' effectively on the papers, with the parties submitting evidentiary proffers by means of affidavits, documentary exhibits, and the like." McGill, 11 F.3d at 225 (citing Aoude v. Mobil Oil Corp., 862 F.2d 890, 894 (1st Cir. 1988)); DeCologero, 821 F.2d at 44. Indeed, a hearing is unnecessary "when a § 2255 motion is conclusively refuted as to the alleged facts by the files and records of the case." McGill, 11 F.3d at 225.

### III.    ARGUMENT

#### A.    Barrows Was Improperly Sentenced as a "Career Offender"

The government agrees with Barrows's claim that he was improperly sentenced as a "career offender" under USSG § 4B1.1. The career offender provisions require that the defendant have "two prior felony convictions" for crimes of violence or controlled substance offenses. See USSG §§ 4B1.1, 4B1.2. A "prior felony conviction" is defined as "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." USSG § 4B1.2, Application Note 1 (emphasis added). Here, one of the two predicate convictions used to enhance Barrows's sentence does not qualify as a "felony conviction" under USSG § 4B1.1. Specifically, Barrows's 1995 state counterfeit substance conviction out of West

Roxbury District Court is <u>not</u> a "felony conviction" because it is punishable by imprisonment in a jail or house of correction for <u>not more than one year</u> (and/or a fine). <u>See</u> Mass. Gen. L. c. 94C, § 32G (copy attached in **<u>Exhibit 4</u>**). Accordingly, Barrows was not, and is not, a "career offender" under USSG § 4B1.1.

Mistakenly, at the sentencing hearing, all parties (government, defense, and Probation) agreed that Barrows <u>was</u> a "career offender" and that the Guideline Sentencing range was therefore 188-235 months. In fact, Barrows's attorney specifically stated that the defense had "examined [this issue] front to back" and that "by our calculations, he was a career offender." <u>See</u> **<u>Exhibit 5</u>** (Tr. of Sentencing Hr'g) at 11 (describing PSR career offender calculation to be "very accurate" and "quite accurate"). Likewise, the government asserted that "there's no question he's a career offender." <u>See</u> <u>id.</u> at 11. In defense of all of parties involved, the Massachusetts counterfeit substance statute, Mass. Gen. L. c. 94C, § 32G, is infrequently charged in state court and one could assume that its penalty structure is akin to that for distributing, or possessing with intent to distribute, actual controlled substances, which is, in fact, a felony offense.

Upon confirming that all parties agreed to the calculations in the PSR, the Court granted a downward departure from CHC VI to CHC V pursuant to USSG § 4A1.3 (overstated criminal history). This departure resulted in a Sentencing Guideline range of 168 -- 210 (TOL 31 / CHC V). Upon agreeing to this departure, the government recommended a sentence of 168 months, the low-end of that range. <u>See</u> **<u>Exhibit 5</u>** (Tr. of Sentencing Hr'g) at 12-13. The Court sentenced Barrows to: 168 months imprisonment, 48 months of supervised release, no fine, and a $900 special assessment. <u>See</u> <u>id</u>. at 19; **<u>Exhibit 6</u>** (Judgment)**.**

Without the career offender enhancements, the following USSG apply:

Base Offense Level:        32 (based on (50-150 grams of "crack cocaine")
§ 3E1.1 Adjustment:        -3

8

Total Offense Level:        29

Criminal History Category:   V (based on 11 criminal history points)

-------------------------------------------------------------------------------------------

140 -- 175 months

See PSR at ¶¶ 47-54, 58-66 (setting forth Probation's initial USSG calculation, before applying §
4B1.1).  Although the Court's sentence -- 168 months -- falls squarely within this proper Sentencing
Guideline range, the government acknowledges that: (i) a serious error was made at sentencing, (ii)
the Court relied on an improperly enhanced Guideline range of 168-210 when imposing Barrows's
sentence, and (iii) but for the error, it is likely that Barrows would have received a lower sentence,
especially in view of the facts that (a) the government would have recommended 140 months
imprisonment in accordance with the Plea Agreement, and (b) this Court departed downward by one
criminal history category and then sentenced Barrows at the low end of the reduced range.

In light of the above, the government agrees that Barrows was improperly sentenced as a
"career offender" under USSG § 4B1.1 and does not object to re-sentencing him for purposes of
curing that mistake.

**B.     Successive Petitions**

As noted above, Barrows filed the instant § 2255 Motion on February 23, 2005, nearly two
years after his first § 2255 motion (docketed as Civil Action No. 03-1-217-PBS) was dismissed.  See
**Exhibit 8** (March 23, 2003 Order of Dismissal).  With respect to "second or successive motions,"
Section 2255 provides as follows:

> A second or successive motion must be certified as provided in section 2244 by
> a panel of the appropriate court of appeals to contain -- (1) newly discovered
> evidence .... or (2) a new rule of constitutional law, made retroactive to cases on
> collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255.

9

This Court, however, should not bar Barrows's instant § 2255 Motion under this "successive" petitions" rule. As chronicled above, Barrows's first § 2255 motion was dismissed upon his request to voluntarily withdraw the motion. A dismissal that is not an adjudication on the merits does not constitute a first petition for purposes of the "successive petitions" rule. See Slack v. McDaniel, 529 U.S. 473, 485-86 (2000) ("[a] habeas petition filed in the district court after an initial habeas petition was unadjudicated on its merits ... is not a second or successive petition"); see also Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001) (holding "before a motion or petition can be regarded as successive, there must be some prior adjudication on the merits or a dismissal with prejudice").

### C.    Timeliness of Barrows's "Career Offender" Claim

A one-year limitations period applies to motions under § 2255. See 28 U.S.C. § 2255.   The limitations period runs from the latest of four triggering events:

>   (1)   the date on which the judgment of conviction becomes final;
>
>   (2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
>   (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id.; see also David v. Hall, 318 F. 3d 343, 344 (1st Cir. 2003). Here, Barrows's conviction became final on February 1, 2002, when the First Circuit dismissed his appeal. See **Exhibit 7**. Any § 2255 motion was therefore due on or before February 1, 2003. Barrows filed the instant § 2255 Motion on February 23, 2005. Accordingly, his motion is untimely under § 2255 (1).

The Court may find, however, that Barrows's motion is timely under § 2255(4).  As set forth above, § 2255(4) provides that the one-year clock begins to run on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  See 28 U.S.C. § 2255(4).  Barrows carries the burden of proving both (i) the "fact supporting [his] claim" and (ii) that he exercised "due diligence" with respect to discovering that fact.  See Johnson v. United States, 544 U.S. 295, 125 S.Ct. 1571 (2005) (addressing claim that § 2255(4) rendered habeas petition timely).

Here, the Court may find that Barrows did not discover "the facts supporting the claim" until in or about November 2004, when Attorney Rankin advised him that the career offender provisions were improperly applied at sentencing.  With respect to the "due diligence" provision in § 2255(4), a hearing or further development of the record may be necessary.  See Johnson,125 S.Ct. at 1580 (acknowledging "statutory mandate that a petitioner act with due diligence").  The government notes, however, that all of the previous lawyers in this case, the U.S. Probation Office, and the Court, itself, unanimously determined that the career offender provisions did, in fact, apply to Barrows's sentencing calculation.  In light of this fact, and the interests of justice, the government would not object to a finding that Barrows's § 2255 Motion is timely under § 2255(4).[1]

Although the First Circuit has not squarely decided the issue, it appears that the doctrine of equitable tolling may also be available to the petitioner.  See, e.g., United States v. Hernandez, 436 F.3d 851, 858 (8th Cir. 2006) ("equitable tolling does apply to § 2255 motions"); United States v. LaFromboise, 427 F.3d 680, 687 (9th Cir. 2005) (noting § 2255 motion was untimely unless petitioner proved elements of equitable tolling); United States v. Pollard, 416 F.3d 48, 56 n.1 (noting

---

[1]  This position applies to the timeliness of Barrows's career offender claim only (not to his frivolous Blakely/Booker claim).

"[e]leven circuits have concluded that, under certain circumstances, equitable tolling of the statute of limitations in either § 2255 for federal prisoners and/or § 2244(d)(1) for state prisoners is possible"); see also Neverson v. Farquharson, 366 F.3d 32, 41 (1ˢᵗ Cir. 2004) (holding doctrine of equitable tolling applies to one-year limitations period in § 2244(d)(1)).  Pursuant to this doctrine, "a statute of limitations 'may be extended for equitable reasons not acknowledged in the statute creating the limitations period.'" Neverson, 366 F.3d at 40 (quoting David, 318 F.3d at 345-46). As recognized by the First Circuit, however, this doctrine "should be invoked only 'sparingly'" and applies only "in exceptional circumstances." Neverson, 366 F.3d at 40, 42.  "This means that, at a minimum, equitable tolling is appropriate only when circumstances beyond the petitioner's control have prevented him from filing on time." Id. at 42.

The party seeking to invoke equitable tolling bears the burden of establishing its applicability. Neverson, 366 F.3d at 41; Delaney v. Matesanz, 264 F.3d 7, 14 (1ˢᵗ Cir. 2001).  The circumstances of this case may, in fact, rise to the level of such "exceptional circumstances."  The Court must determine if Barrows has made the requisite showing.  Again, a hearing and/or further development of the record may be necessary.

### D.    Barrows's "Blakely" Claim Should be Summarily Dismissed as Frivolous

The second claim set forth in Barrows's § 2255 Motion, however, is utterly frivolous and should be dismissed without a hearing.  As noted above, according to the First Circuit, a hearing is unnecessary "when a § 2255 motion is conclusively refuted as to the alleged facts by the files and records of the case." McGill, 11 F.3d at 225.  Such circumstances exist here.

Specifically, Barrows claims that he is entitled to relief under Blakely v. Washington, 124 S.Ct. 2531 (2004) and United States v. Booker, 125 S.Ct. 738 (2005), because the "drug type/drug quantity [was] not properly listed in the Indictment" and the "100 to 1 ratio was improperly applied

12

in this case."  See § 2255 Motion at 5.  Barrows's claim, however, fails on both the law and the facts:

First, Barrows's claim fails as a matter of law.  The Sixth Amendment holding in Booker[2] constitutes a "new constitutional rule of criminal procedure," which, under Teague v. Lane, 489 U.S. 288 (1989), is not retroactively applicable to cases that became final before the decision was announced.  The Supreme Court's decision in Schriro v. Summerlin, 124 S. Ct. 2526 (2004), clearly indicates that Booker is a new procedural rule that is not retroactive to cases on collateral review.  In Summerlin, the Court considered whether Ring v. Arizona, 536 U.S. 584 (2002), applies retroactively to cases that had already become final when Ring was decided.  Ring held that because Arizona law authorized the death penalty only if an aggravating factor was present, Apprendi v. New Jersey, 530 U.S. 466 (2000), required the existence of such a factor to be proved to a jury rather than to a judge.  Summerlin's conviction and death sentence, which was imposed under the same Arizona law that was at issue in Ring, became final long before Ring was decided.  The Supreme Court held that "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review."  124 S. Ct. at 2526.  The Court also held that Ring did not fall within Teague's narrow exception for "watershed rules" of criminal procedure.  Consistent with the reasoning of Summerlin, the Sixth Amendment jury-trial holding of Booker is also not a watershed rule of criminal procedure.

Under Booker and Apprendi, the error in enhancing a defendant's sentence based on facts found by the judge also involves a deprivation of the due process right to proof beyond a reasonable doubt.  Nevertheless, all of the courts of appeals that have considered the question have held that

---

[2]  For purposes of this argument, the Government's references to "Booker" apply equally to Barrows's claim under Blakely, as "*Blakely* claims are now viewed through the lens of [*Booker*]."  Cirilo-Munoz v. United States, 404 F.3d 527, 532 (1st Cir. 2005).

Apprendi is a procedural rule that does not fall within the "watershed" exception in Teague, and that Apprendi claims are therefore not cognizable on collateral review.  See, e.g., Sepulveda v. United States, 330 F.3d 55 (1st Cir. 2003); Coleman v. United States, 329 F.3d 77 (2d Cir. 2003); United States v. Swinton, 333 F.3d 481 (3d Cir. 2003); United States v. Sanders, 247 F.3d 139 (4th Cir. 2001); United States v. Brown, 305 F.3d 304 (5th Cir. 2002); Goode v. United States, 305 F.3d 378 (6th Cir. 2002); Curtis v. United States, 394 F.3d 841 (7th Cir. 2002); United States v. Moss, 252 F.3d 993 (8th Cir. 2001); United States v. Sanchez-Cervantes, 282 F.3d 664 (9th Cir. 2002); United States v. Mora, 293 F.3d 1213 (10th Cir. 2002); McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001).  The same is true for Booker challenges to sentences imposed under the Guidelines.

The First Circuit's recent decision in Cirilo-Munoz v. United States, 404 F.3d 527 (1st Cir. 2005) is instructive.  There, the defendant raised a similar Booker challenge as raised by Barrows. In rejecting the claim, the First Circuit stated as follows:

> In our view, the use of judge-made findings at sentencing does not undermine "accuracy" (in terms of substantially different outcomes) or undermine fundamental fairness.  Such judge-made findings have been the conventional practice throughout our nation's history. They will, post-*Booker*, continue to be the rule where the sentence is within statutory limits.  We have already decided that *Apprendi,* 530 U.S. at 430, which provides jury trials for increasing statutory maximums, would not apply retroactively.  *See Sepulveda*, 330 F.3d at 61-63.  This resolves any comparable *Blakely*-like claim in this circuit.

Cirilo-Munoz, 404 F.3d at 533.[3]

The Court should also summarily dismiss Barrows's Booker claim because it is wholly devoid of any factual support.  Barrows asserts that the "drug type/drug quantity [was] not properly listed in the Indictment" and the "100 to 1 ratio was improperly applied in this case." See § 2255

---

[3]  Moreover, Barrows has failed to show both "cause" for his failure to previously raise the issue and "actual prejudice" resulting from the alleged Booker error.  See Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Frady, 456 U.S. 152 (1982).

Motion at 5.  These assertions fly in the face of the record before this Court.  Specifically, contrary to Barrows's assertions, both drug weight and drug type are specifically alleged in the indictment. See **Exhibit 1** (Indictment) at Counts 1 -- 9 (alleging distribution of "cocaine base, also known as 'crack cocaine'"); id. at Counts 5 -- 9 (alleging distribution "involved 5 grams or more of ... cocaine base, also known as 'crack cocaine'").

The transcript of the Rule 11 hearing also contradicts Barrows's factual assertions. Specifically, the transcript shows that the Court, the government, and the defendant, himself, discussed both drug type and drug weight at all points throughout the Rule 11 hearing.  For example, the Court ensured that the defendant had a copy of the Indictment (which referenced both drug type and drug weight) in front of him throughout the hearing.  See **Exhibit 3** (Tr. of Rule 11 hr'g) at 14. In addition, in its recitation of the facts if the case had gone to trial, the government referred to "crack cocaine" and provided specific drug weights to support each count of the indictment.  See id. at 14-19.

After a comprehensive Rule 11 colloquy from the Court, Barrows voluntarily and intelligently pled guilty to all nine counts of distributing "crack cocaine," agreeing with each and every one of the specific drug weights proffered by the government.  See id. at 14-19.  Moreover, Barrows did so after signing a written Plea Agreement, which also specifically referred to "crack cocaine" and a total drug weight of 132.7 grams.  See **Exhibit 2** (Plea Agreement).  As such, even if Booker did apply retroactively, the record clearly establishes that Barrows simply has no such claim here.  See Blakely, 124 S.Ct. at 2537 (noting Apprendi rights implicated only where sentence is not based on "facts reflected in the jury verdict or admitted by the defendant") (emphasis added).

## IV.   CONCLUSION

For all of the foregoing reasons, the United States respectfully submits that Petitioner Aaron

Barrows's § 2255 Motion should be allowed in part and denied in part:  *i.e.*, (i) Barrows's request

for re-sentencing to cure the career offender calculation should be allowed, and (ii) the remainder

of Barrows's § 2255 Motion should be summarily dismissed as frivolous.


Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


By:    */s/ Lisa M. Asiaf*                    

Date: March 3, 2006                    LISA M. ASIAF
Assistant U.S. Attorney
Tel:  (617) 748-3268


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically

to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies

will be sent to those indicated as non-registered participants on March 3, 2006.


 */s/ Lisa M. Asiaf*                    
LISA M. ASIAF
Assistant U.S. Attorney


16

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.: *OO - 10331-PBS* |
| | ) | |
| AARON BARROWS | ) | VIOLATION: |
|   aka "LURCH", | ) | |
|   aka "STEVE", | ) | 21 U.S.C. § 841(a)(1) - |
| | ) | Possession with Intent to |
|        Defendant | ) | Distribute, and Distribution |
| | ) | of, Cocaine Base |
| | ) | |

### INDICTMENT

**COUNT ONE:**   (Title 21, United States Code, Section 841(a)(1)
              Possession with Intent to Distribute, and
              Distribution of, Cocaine Base)

The Grand Jury charges that:

On or about October 14, 1999, in Plymouth, in the District of Massachusetts,

**AARON BARROWS,**
**aka "LURCH",**
**aka "STEVE",**

defendant herein, knowingly and intentionally possessed with intent to distribute, and distributed, a quantity of cocaine base, also known as "crack cocaine", a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1).

1

**COUNT TWO**:    **(Title 21, United States Code, Section 841(a)(1)**
**Possession with Intent to Distribute, and**
**Distribution of, Cocaine Base)**

The Grand Jury further charges that:

On or about October 27, 1999, in Plymouth, in the District

of Massachusetts,

**AARON BARROWS,**
**aka "LURCH",**
**aka "STEVE",**

defendant herein, knowingly and intentionally possessed with

intent to distribute, and distributed, a quantity of cocaine

base, also known as "crack cocaine",  a Schedule II controlled

substance.

All in violation of Title 21, United States Code, Section

841(a)(1).

2

**COUNT THREE:**    **(Title 21, United States Code, Section 841(a)(1)
Possession with Intent to Distribute, and
Distribution of, Cocaine Base)**

The Grand Jury further charges that:

On or about May 2, 2000, in Pembroke, in the District of
Massachusetts,

> **AARON BARROWS,**
> **aka "LURCH",**
> **aka "STEVE",**

defendant herein, knowingly and intentionally possessed with
intent to distribute, and distributed, a quantity of cocaine
base, also known as "crack cocaine", a Schedule II controlled
substance.

All in violation of Title 21, United States Code, Section
841(a)(1).

**COUNT FOUR:**     **(Title 21, United States Code, Section 841(a)(1)**
                    **Possession with Intent to Distribute, and**
                    **Distribution of, Cocaine Base)**

The Grand Jury further charges that:

On or about May 4, 2000, in Pembroke, in the District of

Massachusetts,

**AARON BARROWS,**
**aka "LURCH",**
**aka "STEVE",**

defendant herein, knowingly and intentionally possessed with

intent to distribute, and distributed, a quantity of cocaine

base, also known as "crack cocaine", a Schedule II controlled

substance.

All in violation of Title 21, United States Code, Section

841(a)(1).

4

**COUNT FIVE**:    **(Title 21, United States Code, Section 841(a)(1)**
                   **Possession with Intent to Distribute, and**
                   **Distribution of, Cocaine Base)**

The Grand Jury further charges that:

On or about May 9, 2000, in Braintree, in the District of

Massachusetts,

**AARON BARROWS,**
**aka "LURCH",**
**aka "STEVE",**

defendant herein, knowingly and intentionally possessed with

intent to distribute, and distributed, a quantity of cocaine

base, also known as "crack cocaine", a Schedule II controlled

substance.

It is further alleged that this violation of Title 21,

United States Code, Section 841(a)(1) involved 5 grams or more of

a mixture or substance containing a detectable amount of cocaine

base, also known as "crack cocaine".

All in violation of Title 21, United States Code, Section

841(a)(1).

5

**COUNT SIX:**    **(Title 21, United States Code, Section 841(a)(1) Possession with Intent to Distribute, and Distribution of, Cocaine Base)**

The Grand Jury further charges that:

On or about May 17, 2000, in Brockton, in the District of Massachusetts,

**AARON BARROWS,**
**aka "LURCH",**
**aka "STEVE",**

defendant herein, knowingly and intentionally possessed with intent to distribute, and distributed, a quantity of cocaine base, also known as "crack cocaine", a Schedule II controlled substance.

It is further alleged that this violation of Title 21, United States Code, Section 841(a)(1) involved 5 grams or more of a mixture or substance containing a detectable amount of cocaine base, also known as "crack cocaine".

All in violation of Title 21, United States Code, Section 841(a)(1).

**COUNT SEVEN:**    **(Title 21, United States Code, Section 841(a)(1) Possession with Intent to Distribute, and Distribution of, Cocaine Base)**

The Grand Jury further charges that:

On or about May 31, 2000, in Braintree, in the District of Massachusetts,

**AARON BARROWS,**
**aka "LURCH",**
**aka "STEVE",**

defendant herein, knowingly and intentionally possessed with intent to distribute, and distributed, a quantity of cocaine base, also known as "crack cocaine", a Schedule II controlled substance.

It is further alleged that this violation of Title 21, United States Code, Section 841(a)(1) involved 5 grams or more of a mixture or substance containing a detectable amount of cocaine base, also known as "crack cocaine".

All in violation of Title 21, United States Code, Section 841(a)(1).

**COUNT EIGHT**:    (Title 21, United States Code, Section 841(a)(1)
                    Possession with Intent to Distribute, and
                    Distribution of, Cocaine Base)

The Grand Jury further charges that:

On or about May 31, 2000, in Boston, in the District of

Massachusetts,

                        **AARON BARROWS,**
                         **aka "LURCH",**
                         **aka "STEVE",**

defendant herein, knowingly and intentionally possessed with

intent to distribute, and distributed, a quantity of cocaine

base, also known as "crack cocaine", a Schedule II controlled

substance.

It is further alleged that this violation of Title 21,

United States Code, Section 841(a)(1) involved 5 grams or more of

a mixture or substance containing a detectable amount of cocaine

base, also known as "crack cocaine".

All in violation of Title 21, United States Code, Section

841(a)(1).

8

**COUNT NINE**:    **(Title 21, United States Code, Section 841(a)(1)**
**Possession with Intent to Distribute, and**
**Distribution of, Cocaine Base)**

The Grand Jury further charges that:

On or about June 12, 2000, in Boston, in the District of
Massachusetts,

**AARON BARROWS,**
**aka "LURCH",**
**aka "STEVE",**

defendant herein, knowingly and intentionally possessed with

intent to distribute, and distributed, a quantity of cocaine

base, also known as "crack cocaine", a Schedule II controlled

substance.

It is further alleged that this violation of Title 21,

United States Code, Section 841(a)(1) involved 5 grams or more of

a mixture or substance containing a detectable amount of cocaine

base, also known as "crack cocaine".

All in violation of Title 21, United States Code, Section

841(a)(1).

9

## **NOTICE OF APPLICABILITY**

The conduct charged in each of Counts 5,6,7,8 and 9 involved more than 5 grams of a mixture or substance containing a detectable amount of cocaine base, also known as "crack cocaine". Accordingly, Title 21, United States Code, Section 841(b)(1)(B) applies to these counts.

**A TRUE BILL**

_____
FOREPERSON OF THE GRAND JURY

Special _____
ASSISTANT U.S. ATTORNEY

**DISTRICT OF MASSACHUSETTS:** Sept. 7 , 2000 , at 1:30 p.m.

Returned into the District Court by the Grand Jurors and filed.

Allen M. Hays
Deputy Clerk

11

# **EXHIBIT 2**



**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

_____

*1 Courthouse Way, Suite 9200*
*Boston, Massachusetts 02210*


March 7, 2001

Rudolph F. Miller, Esq.
555 Amory Street
Jamaica Plain, MA 02130

    Re: <u>United States v. Aaron Barrows</u>
       Cr. # 00-10331-PBS

Dear Mr. Miller:

    This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Aaron Barrows ("Defendant"), in the above-captioned case. The Agreement is as follows:

    **1.**    **Change of Plea**

    At the earliest practicable date, Defendant shall plead guilty to Counts One through Nine (all counts) of the above-captioned indictment. Defendant expressly and unequivocally admits that he knowingly, willfully and intentionally committed the crimes alleged in the indictment, and is in fact guilty of those offenses.

    **2.**    **Penalties**

    Defendant faces the following maximum penalties on each count:

        <u>Counts 1-4</u>

        20 years in prison;
        $1,000,000 fine;
        5 years (minimum 3 years) Supervised Release; and,
        $100 Special Assessment

### Counts 5-9

40 years (mandatory minimum 5 years) imprisonment;
$2,000,000 fine;
5 years (minimum 4 years) Supervised Release; and
$100 Special Assessment

3.    **Sentencing Guidelines**

The parties will take the following positions at sentencing
under the United States Sentencing Guidelines:

#### A.    Drug Quantity

The drug quantity attributable to the defendant is 132.7
grams of cocaine base otherwise known as "crack cocaine."

#### B.    Acceptance of Responsibility

Based on Defendant's prompt acceptance of personal
responsibility for the offense(s) of conviction in this case, and
information known to the U.S. Attorney at this time, the U.S.
Attorney agrees to recommend that the Court reduce by three
levels Defendant's Adjusted Offense Level under U.S.S.G. § 3E1.1.

The U.S. Attorney specifically reserves the right not to
recommend a reduction under U.S.S.G. § 3E1.1 if, at any time
between his execution of this Agreement and sentencing Defendant:

> (a)  Fails to admit a complete factual basis for the
> plea;
>
> (b)  Fails to truthfully admit his conduct in the
> offenses of conviction;
>
> (c)  Falsely denies, or frivolously contests, relevant
> conduct for which Defendant is accountable under
> U.S.S.G. § 1B1.3;
>
> (d)  Fails to provide truthful information about his
> financial status;
>
> (e)  Gives false or misleading testimony in any
> proceeding relating to the criminal conduct
> charged in this case and any relevant conduct for
> which Defendant is accountable under U.S.S.G. §

2

1B1.3;

(f)   Engages in acts which form a basis for finding
that Defendant has obstructed or impeded the
administration of justice under U.S.S.G. § 3C1.1;

(g)   Intentionally fails to appear in Court or violates
any condition of release;

(h)   Commits a crime;

(i)   Transfers any asset protected under any provision
of this Agreement; and/or

(j)   Attempts to withdraw his guilty plea.

Defendant expressly understands that he may not withdraw his
plea of guilty if, for any of the reasons listed above, the U.S.
Attorney does not recommend that he receive a reduction in
Offense Level for acceptance of responsibility.

Defendant expressly understands that, in addition to
declining to recommend an acceptance-of-responsibility
adjustment, the Government may seek an upward adjustment pursuant
to U.S.S.G. § 3C1.1 if Defendant obstructs justice after date of
this Agreement.

## C.   Other Adjustments

Other than expressly set forth herein regarding the
acceptance-of-responsibility adjustment, the defendant will not
seek any downward adjustments to the Base Offense Level.

## 4.   Sentence Recommendation

If the motion for downward departure referenced below is not
filed, the U.S. Attorney agrees to recommend the following
sentence before the District Court:

(a)   Imprisonment at the low end of the Sentencing
Guideline range as determined by the Court, but no
lower than any applicable minimum mandatory term
of imprisonment;

(b)   Fine at the low end of the Sentencing Guideline
Range unless the court finds pursuant U.S.S.G. §
5E1.2(e) that Defendant is not able and, even with
the use of a reasonable installment schedule, is

3

not likely to become able to pay a fine;

(c)  Mandatory special assessment of $900 (for nine counts);

(d)  Five Years Supervised Release.

## A.  Departures

Other than the potential motion pursuant to U.S.S.G. §5K1.1 referenced below, the U.S. Attorney and Defendant are unaware at this time of any basis for a departure from the sentencing range established by the United States Sentencing Guidelines.   In the event that either the U.S. Attorney or Defendant subsequently learns that there is a basis for moving for departure, that person will give written notice to the other party of the basis for such departure not less than fourteen days before sentencing. Any basis for departure for which written notice is not received at least fourteen days before sentencing is hereby expressly waived and cannot be argued at the time of sentencing.

## B.  Appeal or Collateral Challenge

In the event of an appeal from, or collateral challenge to, Defendant's sentence, the U.S. Attorney reserves his right to argue the correctness of Defendant's sentence and the manner in which the District Court determines it.

## 5.  Payment of Mandatory Special Assessment

Defendant agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Defendant establishes to the satisfaction of the Court that Defendant is financially unable to do so.

## 6.  Cooperation

### a.  Terms of Cooperation

Defendant agrees to cooperate fully with law enforcement agents and government attorneys.  He must provide complete and truthful information to all law enforcement personnel.   If his testimony is requested, he must testify truthfully and completely before any grand jury, and at any hearing and trial.   Defendant must answer all questions put to him by any law enforcement agents or government attorneys and must not withhold any information. He must not attempt to protect any person or entity through false information or omission, or to implicate falsely

4

any person or entity.  Upon request, he must furnish all
documents, objects and other evidence in his possession, custody
or control that are relevant to the government's inquiries.

Defendant understands that he has a right to have counsel
present when communicating with representatives of the government
concerning the criminal conduct with which he has been charged.
To facilitate his cooperation, Defendant hereby knowingly and
voluntarily waives this right with respect to all debriefings by
law enforcement agents and government attorneys and all
appearances to testify.  This waiver may be revoked at any time
by a specific request by Defendant or his counsel without
otherwise affecting the terms or enforceability of this
Agreement.

To enable the Court to have the benefit of all relevant
sentencing information, Defendant waives any rights he may have
to prompt sentencing and will join in any requests by the U.S.
Attorney that sentencing be postponed until Defendant's
cooperation is complete.  Defendant understands that the date of
Defendant's sentencing is within the sole discretion of the Court
and that this Agreement may require Defendant's cooperation to
continue even after Defendant has been sentenced.  Defendant's
failure to continue to cooperate pursuant to the terms of this
Agreement after sentence is imposed shall constitute a breach of
this Agreement by Defendant.

### b.    Substantial Assistance Motion

In the event that Defendant provides substantial assistance
in the investigation or prosecution of another person who has
committed a criminal offense, the U.S. Attorney agrees that, at
or before the time of sentencing, the U.S. Attorney will make a
motion under U.S.S.G. § 5K1.1, and if the U.S. Attorney
determines it to be appropriate, 18 U.S.C. § 3553(e) so that the
sentencing court may impose a sentence below that which otherwise
would be required under the Sentencing Guidelines and the
relevant statutes.  The determination whether Defendant has
provided substantial assistance rests solely in the discretion of
the U.S. Attorney and is not subject to appeal or review.  The
U.S. Attorney expressly reserves the right to decline to file a
motion pursuant to U.S.S.G. § 5K1.1 if Defendant violates any
condition of his pretrial release, violates any of the
requirements of honesty and candor detailed above, or engages in
any criminal conduct after the date he signs this Agreement.  The
U.S. Attorney reserves the right, in his sole discretion, to file
a motion under U.S.S.G. § 5K1.1 but not under 18 U.S.C. §
3553(e).  Defendant may not withdraw his plea if the U.S. Attorney

5

determines that Defendant has not rendered substantial
assistance, if the U.S. Attorney determines to file a motion
under U.S.S.G. § 5K1.1 but not under 18 U.S.S.G. § 3553(e), or if
the Court refuses to grant the U.S. Attorney's motion for a
downward departure.

### c.   Sentence Recommendation with Substantial Assistance

If Defendant provides substantial assistance, subject to all
the provisions above, the U.S. Attorney will advise the
sentencing judge of the full nature, extent and value of the
assistance provided by Defendant.

The U.S. Attorney reserves the right to recommend a
particular sentence or sentencing range, or to make no
recommendation at Defendant's sentencing.

### d.   Letter Immunity

In return for Defendant's full and truthful cooperation, the
U.S. Attorney agrees not to use any information provided by
Defendant pursuant to this Agreement or pursuant to any proffer
letter (or any information directly or indirectly derived
therefrom) against Defendant in any criminal case except in a
prosecution (1) for perjury or obstruction of justice, or for
making a false statement after the date of this Agreement; or (2)
for an act of physical violence against the person of another, or
conspiracy to commit any such act of violence. The U.S. Attorney
reserves the right to respond fully and completely to all
requests for information by the District Court and U.S. Probation
Office in this case.  All such disclosures, however, shall be
made subject to the provisions constraining the use of this
information by the District Court and U.S. Probation Office
contained in U.S.S.G. § 1B1.8(a) and the commentary thereto.
Notwithstanding the provisions of U.S.S.G. § 1B1.8(b)(5) and the
commentary thereto, the U.S. Attorney agrees to take the position
that at the time of sentencing information provided by Defendant
pursuant to this Agreement should not be used either in
determining where within the applicable guideline range to
sentence Defendant or in determining whether, or to what extent,
a departure from the Sentencing Guidelines is warranted.

If the U.S. Attorney determines that Defendant has breached
this Agreement by making any false, incomplete or misleading
statement, or by providing any false, incomplete or misleading
information to any law enforcement personnel, grand jury or
court, the U.S. Attorney may terminate this Agreement as set

forth below, and may also prosecute Defendant for any and all
offenses that could be charged against him in the District of
Massachusetts, including, but not limited to, false statements
and perjury.

### 7.    Court Not Bound By Agreement

The sentencing recommendations made by the parties and their
respective calculations under the Sentencing Guidelines are not
binding upon the U.S. Probation Office or the sentencing judge.
Within the maximum sentence which Defendant faces under the
applicable law, the sentence to be imposed is within the sole
discretion of the sentencing judge. Defendant's plea will be
tendered pursuant to Fed. R. Crim. P. 11(e)(1)(B). Defendant may
not withdraw his plea of guilty regardless of what sentence is
imposed. Nor may Defendant withdraw his plea because the U.S.
Probation Office or the sentencing judge declines to follow the
Sentencing Guidelines calculations or recommendations of the
parties. In the event that the sentencing judge declines to
follow the Sentencing Guidelines calculations or recommendations
of the U.S. Attorney, the U.S. Attorney reserves the right to
defend the sentencing judge's calculations and sentence in any
subsequent appeal or collateral challenge.

### 8.    Information For Presentence Report

Defendant agrees to provide all information requested by the
U.S. Probation Office concerning his assets.

### 9.    Civil Liability

By entering into this Agreement, the U.S. Attorney does not
compromise any civil liability, including but not limited to any
tax liability, which Defendant may have incurred or may incur as
a result of his conduct and his plea of guilty to the charges
specified in paragraph one of this Agreement.

### 10.    Rejection of Plea By Court

Should Defendant's guilty plea not be accepted by the Court
for whatever reason, or later be withdrawn on motion of
Defendant, this Agreement shall be null and void at the option of
the U.S. Attorney.

### 11.    Breach of Agreement

If the U.S. Attorney determines that Defendant has failed to
comply with any provision of this Agreement, has violated any

7

condition of his pretrial release, or has committed any crime following his execution of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to him under the law, irrespective of whether he elects to be released from his commitments under this Agreement. Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this Agreement. Defendant recognizes that no such breach by him of an obligation under this Agreement shall give rise to grounds for withdrawal of his guilty plea. Defendant understands that, should he breach any provision of this agreement, the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, materials, documents or objects which may be provided by him to the government subsequent to this Agreement, without any limitation. In this regard, Defendant hereby waives any defense to any charges which he might otherwise have under any statute of limitations or the Speedy Trial Act.

### 12. Who Is Bound By Agreement

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

### 13. Complete Agreement

This letter contains the complete and only agreement between the parties relating to the disposition of this case. No promises, representations or agreements have been made other than those set forth in this letter and in the proffer letter dated November 21, 2000. This Agreement supersedes prior understandings, if any, of the parties, whether written or oral with the sole exception of those contained in any proffer letter. This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the Agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Joseph N. Laplante.

Very truly yours,

DONALD K. STERN
United States Attorney

By: _____

JAMES B. FARMER
Assistant U.S. Attorney
Chief, Criminal Division

STEPHEN P. HEYMANN
Assistant U.S. Attorney
Deputy Chief,
Criminal Division

Joseph N. Laplante
Assistant U.S. Attorney
(617)748-3371

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

AARON BARROWS
Defendant

Date: 3/7/01

I certify that Aaron Barrows has read this Agreement and that we have discussed its meaning. I believe he understands the Agreement and is entering into the Agreement freely, voluntarily and knowingly.

Rudolph F. Miller, Esq.
Attorney for Defendant

Date: 3/7/01

10

# **EXHIBIT 3**

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

---------------------------------
UNITED STATES OF AMERICA          :          Cr. No. 00-10331-PBS
                                  :
                                  :
            V.                    :          Courtroom No. 13
                                  :          1 Courthouse Way
                                  :          Boston, MA 02210-3002
AARON BARROWS                     :          2:00 p.m., Tuesday
---------------------------------            March 27, 2001


Change of Plea


Before:          THE HONORABLE PATTI B. SARIS,
                 UNITED STATES DISTRICT JUDGE




APPEARANCES:

Joseph LaPlante, Assistant United States Attorney,
   1 Courthouse Way, Suite 9200, Boston, MA 02210,
   on behalf of the Government.

R.F. Miller & Associates, (by Rudolph F. Miller, Esquire,),
   555 Amory Street, Jamaica Plain, MA 02130,
   on behalf of the Defendant.


                  Marie L. Cloonan
                Federal Court Reporter
            1 Courthouse Way - Room 5209
           Boston, MA 02210 - 617-439-7086
        Mechanical Steno - Transcript by Computer

2

```
 1                           * * *
 2              THE CLERK:  United States of America v. Aaron
 3      Barrows, Criminal Action No. 00-10331, will now be heard
 4      before this Court.
 5              Will counsel please identify themselves for the
 6      record?
 7              MR. LaPLANTE:  Good afternoon, your Honor.  Joseph
 8      LaPlante, for the United States.
 9              MR. MILLER:  Good afternoon, Judge.  Rudolph Miller
10      representing the defendant, Mr. Aaron Barrows.
11              THE COURT:  Good afternoon.
12              Why are we here?
13              MR. LaPLANTE:  Today, we're here for a change of
14      plea, Judge.
15              THE COURT:  Is there a plea agreement?
16              MR. LaPLANTE:  Yes, your Honor.
17              THE COURT:  There it is.  All right.  Okay?
18              Mr. McGrath?
19              THE CLERK:  Mr. Barrows, please rise.
20              Mr. Barrows, you are named in a nine-count
21      indictment in which you have previously entered a plea of
22      not guilty as to Counts 1 through 9, charging you with
23      possession with intent to distribute and distribution of
24      cocaine base in violation of Title 21 of the United States
25      Code Section 841(a)(1).
```

3

1              Do you now wish to change your plea of not guilty?

2              THE DEFENDANT:   Yes.

3              THE CLERK:   What say you as to Counts 1 through 9,

4      guilty or not guilty?

5              THE DEFENDANT:   Guilty, sir.

6              THE CLERK:   Please go forward to the witness stand

7      with your attorney to be sworn.

8              (Defendant sworn.)

9              THE COURT:   Good afternoon.

10             THE DEFENDANT:   Good afternoon.

11             MR. MILLER:   A bit louder.

12             THE DEFENDANT:   Good afternoon.

13             THE COURT:   You know, he's so tall, usually --

14     don't be uncomfortable -- but you can just get in there a

15     little bit more.

16             THE DEFENDANT:   No, I'm fine.

17             THE COURT:   Are you all right now?

18             THE DEFENDANT:   Yes.

19             THE COURT:   All right.

20             The reason I like to have your lawyer right up --

21             THE MARSHAL:   Necessity is -- something like that.

22             (Books placed under microphone.)

23             THE DEFENDANT:   Thank you.

24             THE COURT:   All right.

25             The reason I like having your lawyer right next to

4

1    you is so that at any time you can say "I don't want to go

2    forward with this proceeding, I want my day in Court."

3            Do you understand that?

4            THE DEFENDANT:  Yes, ma'am.

5            THE COURT:  And, similarly, if at any point you say

6    "I want to ask my lawyer a question," you have the right to

7    just say "Take a recess" or lean over and talk to him.

8            Do you understand that?

9            THE DEFENDANT:  Yes.

10           THE COURT:  All right.

11           Do you understand that you're now under oath and if

12   you answer any of my questions falsely, your answers may

13   later be used against you in another prosecution for perjury

14   or making a false statement?

15           THE DEFENDANT:  Yes.

16           THE COURT:  What is your full name?

17           THE DEFENDANT:  Aaron David Barrows.

18           THE COURT:  What are your nicknames?

19           THE DEFENDANT:  I use the name Steve on occasions.

20           THE COURT:  Do other people call you anything else?

21           THE DEFENDANT:  Like my family calls me Slim.

22           THE COURT:  Calls you what?

23           THE DEFENDANT:  Slim.

24           THE COURT:  Slim?

25           THE DEFENDANT:  Yeah.

5

1      THE COURT:  It says here "a/k/a Lurch."  Is that
2    you?
3      THE DEFENDANT:  Never use that.
4      THE COURT:  Has anyone ever called you that?
5      THE DEFENDANT:  Not to my knowledge.  Not to my
6    face at least.
7      THE COURT:  Where does that come from?
8      MR. LaPLANTE:  That came from informants and people
9    involved in the investigation, your Honor.  I don't have any
10   particular attachment to it, but it just came out of the
11   investigation.
12     THE COURT:  All right.  So, that's not relevant to
13   this at all?
14     MR. LaPLANTE:  Not in the slightest.
15     THE COURT:  Okay.
16     How far did you go in school?
17     THE DEFENDANT:  Twelfth grade.  I dropped out in
18   the 12th grade.
19     THE COURT:  Where did you go to school?
20     THE DEFENDANT:  Brighton High.
21     THE COURT:  How old are you now?
22     THE DEFENDANT:  Twenty-five.
23     THE COURT:  Did you ever get your GED?
24     THE DEFENDANT:  Yes, I did.
25     THE COURT:  Where?

6

1          THE DEFENDANT:  Boston Community Centers on Mass.

2    Ave.

3          THE COURT:  And can you read and write now?

4          THE DEFENDANT:  Yes, I can.

5          THE COURT:  And did you read the plea agreement?

6          THE DEFENDANT:  Yes, thoroughly.

7          THE COURT:  Did you read the indictment?

8          THE DEFENDANT: Yes.

9          THE COURT:  Have you ever been treated for any

10   mental illness or addiction to narcotic drugs?

11         THE DEFENDANT:  No.

12         THE COURT:  Are you currently under the influence

13   of any drugs or medications or alcoholic beverages?

14         THE DEFENDANT:  None whatsoever.

15         THE COURT:  Are you under the influence of any

16   prescribed medication?

17         THE DEFENDANT:  None.

18         THE COURT:  And were you supposed to be taking any

19   medications that you weren't given?

20         THE DEFENDANT:  No.

21         THE COURT:  Have you been satisfied with the

22   representation of your attorney?

23         THE DEFENDANT:  Very much so.

24         THE COURT:  Do you feel in any way that he's

25   pressured you into pleading guilty?

7

1          THE DEFENDANT:  No.

2          THE COURT:  Has anyone made any promises or threats

3    to you apart from those in the plea agreement?

4          THE DEFENDANT:  No.

5          THE COURT:  Has anyone promised you what my

6    sentence will be?

7          THE DEFENDANT:  No.

8          THE COURT:  Do you understand I am not required to

9    follow the plea agreement?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And is that your signature on the back

12    of the plea agreement?

13          THE DEFENDANT:  Oh, yes.

14          THE COURT:  Did you sign it?

15          THE DEFENDANT:  Yes, I did.

16          THE COURT:  I think I have the original right here.

17          And, Mr. Miller, you've witnessed that?

18          MR. MILLER:  Yes, I did, Judge.

19          THE COURT:  Do you understand that the offense to

20    which you're pleading is a guilty plea to a felony offense

21    and that if your plea is accepted, it will deprive you of

22    certain important civil rights, such as the right to vote,

23    to hold public office, to serve on a jury and to possess

24    firearms?

25          THE DEFENDANT  Yes, ma'am.

8

```
 1              THE COURT:  Are you a citizen?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Now, I'm going to ask the government to

 4    state any maximum and minimum sentence that's applicable.

 5              MR. LaPLANTE:  Yes, your Honor.

 6              With respect to Counts 1 through 4, your Honor, the

 7    maximum penalties are a 20-year term of imprisonment,

 8    followed by a mandatory three-year period, as it provides,

 9    release; a one-million-dollar fine and a one-hundred-dollar

10    special assessment.

11              With respect to the remaining counts, the maximum

12    is a 40-year term of imprisonment, with a five-year minimum

13    mandatory term, followed by a minimum four-year supervised

14    release period, five-year maximum supervised release, a

15    two-million-dollar fine and a one-hundred-dollar special

16    assessment.

17              THE COURT:  All right.

18              Is this one of these cases where Apprendi is a

19    potential issue?

20              MR. LaPLANTE:  No, your Honor, it's not.

21              THE COURT:  And I say that with respect to

22    statutory maximum.

23              Would it make any difference, any issues with

24    respect to the minimum?

25              MR. LaPLANTE:  No, your Honor.
```

9

1          Well, not under the First Circuit's interpretation

2     of Apprendi, as I understand it now, it is not.

3          THE COURT:  Okay.

4          Have you talked with your attorney about the

5     sentencing guidelines?

6          THE DEFENDANT:  Yes, I have.

7          THE COURT:  Essentially, when I accept this plea, I

8     will send this case to the Probation Department and the

9     Probation Department prepares something called a

10    pre-sentence report which describes in detail the offense,

11    who you are as a human being, your family, that kind of

12    thing, any criminal history background and, then, proposes

13    to me a set of sentencing guideline ranges.

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Sometimes that's consistent with the

17    plea agreement, but sometimes it's not.

18          Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And to the extent that your attorney

21    disagrees with the pre-sentence report, your attorney has a

22    right to object in writing and, then, get a hearing on those

23    objections.

24          Do you understand that?

25          THE DEFENDANT:  Yes.

10

1          THE COURT:  And sometimes the government objects,

2     the government disagrees, and the government has a right to

3     object and to also have a hearing on any objections.

4          Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And, at the sentencing hearing, I will

7     do the best that I can, based on the facts and the law as I

8     see it, to impose a correct sentence.

9          Do you understand?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Now, if you disagree with the sentence

12    -- I take it -- there was no waiver of appeal here, was

13    there?

14         MR. LaPLANTE:  No, your Honor.

15         MR. MILLER:  No, Judge.

16         THE COURT:  If I disagree with the -- excuse me.

17    If you disagree with the sentence that I impose, you have a

18    right to appeal that sentence.

19         Do you understand that?

20         THE DEFENDANT:  Yes.

21         THE COURT:  But you will not at that point have a

22    right to withdraw your guilty plea.

23         Do you understand?

24         THE DEFENDANT:  Yes.

25         THE COURT:  So, you might challenge the sentence --

11

1    fair enough -- sometimes I make mistakes and it goes up on

2    appeal but, at that point, you cannot withdraw your guilty

3    plea.

4         Do you understand?

5         THE DEFENDANT:  Yes, ma'am.

6         THE COURT:  And, similarly, the government

7    sometimes disagrees with the sentence that I might impose or

8    a judge might impose.  And the government has a right to

9    appeal that sentence.

10        Do you understand?

11        THE DEFENDANT:  Yes.

12        THE COURT:  And, similarly, at that point, if a

13   court of appeals would agree with the government, you

14   wouldn't have a right to withdraw your guilty plea.

15        Do you understand that?

16        THE DEFENDANT:  Yes.

17        THE COURT:  All right.

18        Now, I want to go through with you the rights that

19   you are giving up by pleading guilty.

20        First of all, do you understand you have a right to

21   plead not guilty?

22        THE DEFENDANT:  Yes.

23        THE COURT:  And do you understand you have a right

24   to the assistance of counsel at each and every stage of the

25   proceeding?

12

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that you have a right

3     to a trial by a jury and that 12 jurors have to unanimously

4     agree that you're guilty beyond a reasonable doubt before

5     you can be convited?

6          THE DEFENDANT:  Yes.

7          THE COURT:  In other words, 12 out of 12 have to

8     agree you're guilty.

9          Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand the government always

12     bears the burden of proof beyond a reasonable doubt and it

13     never shifts to you?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand you're giving up the

16     presumption of innocence?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you understand that you have a

19     privilege against self-incrimination which means you don't

20     have to testify against yourself?

21          THE DEFENDANT:  Yes.

22          THE COURT:  On the other hand, you could testify on

23     your own behalf if you chose to do that.

24          Do you understand that?

25          THE DEFENDANT:  Yes, I do.

13

1         THE COURT:  Do you understand you have a right to

2    subpoena witnesses on your own behalf and to cross-examine

3    witnesses against you?

4         THE DEFENDANT:  Yes.

5         THE COURT:  And, understanding all these important

6    rights, do you still want to plead guilty?

7         THE DEFENDANT:  Yes, I do.

8         THE COURT:  And I don't know anything about this

9    case.  You know, I'm about to hear all about the facts.

10   But, do you understand -- and I'd like to emphasize -- that

11   that jury takes really seriously that high burden of proof

12   beyond a reasonable doubt.  And you're giving up that right

13   to that unanimous jury verdict.

14         Do you understand that?

15         THE DEFENDANT:  Yes, I do, fully.

16         THE COURT:  All right.

17         Now, I'm going to ask the government, now.  I don't

18   know if you and I have done one of these indictments before.

19   But, what I'd like to do -- because, otherwise, I find

20   sometimes people plea to say yes and I wanted them to focus

21   date by date.  As I understand --

22         MR. LaPLANTE:  That's fine, your Honor.

23         THE COURT:  All right.  So, you'll do October 14th

24   and I'll ask him if he agrees to what is said about October

25   14th, and we'll go through it at that time.

14

1        Do you have it right there in front of you?

2        MR. MILLER:  We do, Judge.

3        THE COURT:  That's perfect I don't necessarily want

4   to reread every single one of the counts.

5        MR. LaPLANTE:  By way of introduction, your Honor,

6   this case involved DEA joint investigation with the Plymouth

7   Police Deparatment with respect to crack dealing in the

8   Plymouth area during late 1999 early 2000.

9        This case involved nine crack sales by the

10   defendant to undercover police officers who were DEA Task

11   Force Agents.  And, in each case, the existence of the crack

12   was confirmed, that it was crack cocaine cocaine base by the

13   DEA laborataory.

14        With respect to Count 1, your Honor, on October

15   14th, 1999, the defendant met a Task Force Agent of the DEA

16   at the Mayflower liquor store in Plymouth.  He handed her

17   2.5 grams of crack cocaine and received in return $300 cash.

18        THE COURT:  Do you disagree with anything he said?

19        THE DEFENDANT:  No.

20        THE COURT:  All right.

21        Do you plead guilty to on or about October 14th,

22   1999, in Plymouth, that you, Aaron Barrows, did knowingly

23   and intentionally possess with intent to distribute and did

24   distribute a quantity of cocaine base, also known as crack

25   cocaine, in violation of federal law?

15



1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.

3          Now, I'm not going to read it each and every time,

4    but, essentially, I'm assuming -- are they all distribution

5    accounts?

6          MR. LaPLANTE:  All exactly the same, your Honor.

7          THE COURT:  All right.  So, I'm not going to reread

8    it every single time.  But, essentially, those are the

9    elements and I'm going to go through date by dates.  Do you

10   understand that?

11         THE DEFENDANT:  All right.

12         THE COURT:  So, let's get to Count 2.

13         MR. LaPLANTE:  Your Honor, in Count -- with respect

14   to Count 2, on October 27th of 1999, the defendant met the

15   same -- the same undercover Task Force Agent that was

16   involved in Count No. 1 at the Burger King on Route 44 in

17   Plymouth.  He handed her 1.9 grams of cocaine base, also

18   known as crack cocaine, in exchange for $300 cash.

19         THE COURT:  Do you plead guilty to distribution of

20   crack cocaine on October 27th, 1999?

21         THE DEFENDANT:  Yes.

22         MR. LaPLANTE:  Your Honor, with respect to Count 3,

23   on May 2nd of the year 2000, the defendant met with a

24   different undercover agent with DEA, this time at the Burger

25   King on Route 139 in Pembroke, Massachusetts.  At that time

16

1    he handed the undercover agent 6.3 grams of crack cocaine,

2    cocaine base, in exchange for $540.

3           THE COURT:  Do you plead guilty to cocaine -- crack

4    cocaine -- cocaine base distribution on May 2nd of 2000 in

5    Pembroke?

6           THE DEFENDANT:  Yes, ma'am.

7           MR. LaPLANTE:  Your Honor, with respect to Count 4,

8    on May 4th of the year 2000, the defendant, again, met the

9    same Task Force Agent at the same Burger King in Pembroke.

10    This time, he handed the Task Force Agent 4.8 grams of

11    cocaine base, also known as crack cocaine, in exchange for

12    $450 cash.

13           THE COURT:  Do you plead guilty to on or about May

14    4th, 2000, in Pembroke, to crack distribution?

15           THE DEFENDANT:  Yes, ma'am.

16           MR. LaPLANTE:  Your Honor, with respect to Count 5,

17    on May 9th, 2000, the defendant met the same undercover Task

18    Force Agent at the Hilltop Steakhouse in Braintree.  At that

19    point, he handed the Task Force Agent 6.9 grams of crack

20    cocaine in exchange for $600 cash.

21           THE COURT:  All right.

22           Do you plead guilty to distribution of 6.9 grams of

23    crack cocaine on May 9th of 2000?

24           THE DEFENDANT:  Yes, ma'am.

25           MR. LaPLANTE:  Your Honor, with respect to Count 6,

17

1    on May 17th in the year 2000, the defendant met the same

2    undercover agent, at the same location, at the Hilltop

3    Steakhouse in Braintree.  He handed the undercover Task

4    Force Agent 27.7 grams of crack cocaine, cocaine base, in

5    exchange for $1,350.

6              THE COURT:  Thank you.

7              Do you plead guilty -- what was -- on May 17th,

8    2000, in Brockton, to distribution --

9              MR. LaPLANTE:  Braintree, your Honor.

10             THE COURT:  Is this Count 6?

11             MR. LaPLANTE:  Yes, your Honor.

12             THE COURT:  Count 6, on the indictment, says

13   Brockton.

14             THE DEFENDANT:  Yes, it does.

15             MR. LaPLANTE:  That is a typographical error, your

16   Honor.  The correct place is Braintree.

17             THE COURT:  What is it, that steakhouse?

18             MR. LaPLANTE:  Hilltop, yes, your Honor.

19             THE DEFENDANT:  Yes, I believe it is a type error.

20             MR. LaPLANTE:  Well, it was --

21             THE COURT:  Wait a minute.

22             So, let me say, do you waive any inconsistencies?

23             MR. MILLER:  We waive it, Judge.  We recognize and

24   we put forward that it was, in fact, at Braintree.

25             THE COURT:  All right.

18

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.

3          So, do you plead guilty to on or about May 17th,

4    2000, in Braintree, at the Hilltop Steakhouse -- is that it?

5          MR. LaPLANTE:  Yes, your Honor.

6          THE COURT:  -- to distribution of 27.7 grams of

7    crack cocaine?

8          THE DEFENDANT:  Yes.

9          MR. LaPLANTE:  Your Honor, with respect to Count 7,

10   on May 31st of 2000, the defendant met with the same

11   undercover Task Force Agent at the Bickford's restaurant in

12   Braintree.  He handed the undercover Task Force Agent 27.7

13   grams of cocaine base, also known as crack cocaine, in

14   exchange for $1,350 cash.

15         THE COURT:  That was the same amount both times?

16         MR. LaPLANTE:  Yes, your Honor.

17         THE COURT:  All right.

18         Do you plead guilty to on May 31st, 2000, at

19   Braintree, distributing 27.7 grams of crack cocaine?

20         THE DEFENDANT:  Yes, ma'am.

21         MR. LaPLANTE:  Your Honor, with respect to Count 8,

22   on May 31st of 2000, the defendant met with the same

23   undercover Task Force Agent, this time at a Bickford's

24   restaurant in the Dorchester neighborhood of Boston.  He

25   handed the undercover Task Force Agent 27.6 grams of cocaine

19

1    base, also known as crack cocaine, in exchange for $1,300.

2            THE COURT:  Do you plead guilty to on May 31st,

3    2000, in Boston, to distribution of 27.7 grams of crack

4    cocaine?

5            MR. LaPLANTE:  27.6, your Honor.

6            THE COURT:  I'm sorry.  I got it wrong.

7            27.6 grams of crack cocaine?

8            THE DEFENDANT:  Yes.

9            MR. LaPLANTE:  Finally, your Honor, with respect to

10   Count 9, on June 12th of the year 2000, the defendant met

11   again with the same undercover Task Force Agent, again, at

12   the Bickford's restaurant in Dorchester.  On this occasion,

13   he handed the undercover agent 27.3 grams of cocaine base,

14   also known as crack cocaine, in exchange for $1,200 cash.

15           THE COURT:  Do you plead guilty on June 12th, 2000,

16   in Boston, to distributing 27.3 grams of cocaine base?

17           THE DEFENDANT:  Yes, ma'am.

18           THE COURT:  All right.  Thank you.

19           Is there any objection to putting the plea

20   agreement in the --

21           MR. LaPLANTE:  Not from the government, your Honor.

22           THE COURT:  -- file?

23           Well, wait a minute.  I see a possibility -- no one

24   is in this room right now except the folks I know -- of a

25   5K.  Is that a likelihood at this point?

20

1           MR. LaPLANTE:  It's still too early to say, your

2    Honor.

3           THE COURT:  All right.

4           Well, let me put it this way.  Right now, I'm

5    putting it in the public file.  If this gets at all -- if

6    you get nervous about this, let us know and we'll seal it.

7           MR. MILLER:  Certainly, Judge.

8           THE COURT:  All right?

9           Do you have any other questions that you want to

10   ask your attorney or me because I'm just about to accept --

11          MR. MILLER:  He does, Judge.  He does.

12          (Discussion off the record.)

13          THE COURT:  Are you okay?  Do you need more time?

14          MR. MILLER:  No.

15          It's just that my client has expressed a desire --

16   we did discuss this -- about this document not being in the

17   public record at some point in time.

18          MR. LaPLANTE:  I don't have an objection to that

19   either, your Honor.

20          THE COURT:  All right.

21          At some point, this will come out into the open.

22   But, at this point, if, in fact, a 5K is a possibility,

23   that's why I asked.  So that's, fine, we'll seal the plea

24   agreement.

25          MR. LaPLANTE:  That's fine, your Honor.

21

1          THE COURT:  Until further order of the Court.  Or

2    it will become public at the time of sentencing unless you

3    move to keep it sealed at that sentencing hearing.

4          MR. MILLER:  Thank you.

5          THE COURT:  Do you plead guilty knowingly, freely

6    and voluntarily?

7          THE DEFENDANT:  Yes.

8          THE COURT:  I find that you are fully competent and

9    capable of entering into an informed plea, that your plea is

10   knowing and voluntary and supported by an independent basis

11   in fact as to each of the essential elements of the offense

12   in each of the counts, including the amounts, and I,

13   therefore, accept the pleas.

14         Do we have a sentencing date?  And let me know a

15   little bit about sentencing.  What are the issues likely to

16   be?

17         MR. LaPLANTE:  Only two issues, your Honor.  We

18   agree to the weight, the quantity involved.  It's unclear to

19   both of us at this point as to whether the defendant will be

20   a career offender.  It's possible.

21         The only other issue is the 5K.  And I think it

22   would be likely that we move for a continuance of the first

23   sentencing hearing because it might take some time to ZZ

24   evolve his cooperation.  It involves some incidents that

25   happened long enough in the past and I think the

22

1     investigation of them will take some time and the

2     defendant's cooperation may take some time to mature to see

3     if it's of substantial assistance.

4          THE COURT:  Well, let's get the sentence report

5     going.  What do you think in the criminal history category?

6     How many prior convictions are there?

7          MR. LaPLANTE:  My best estimate, your Honor, is

8     that if he's not found to be a career offender, which will

9     result in a Category 6, he'll probably be a Category 4.

10         THE COURT:  So, that puts him at what?  What's his

11    likely range at a 4?

12         MR. LaPLANTE:  Likely range at a 4, your Honor, I

13    would say it is a -- if he's not a career offender -- 121 to

14    151 months before -- that's with the three-point reduction

15    for acceptance and without the 5K.

16         THE COURT:  Well --

17         MR. LaPLANTE:  121 to 151.

18         THE COURT:  So, needless to say, even if there's a

19    continuance --

20         MR. LaPLANTE:  It won't make any difference.

21         THE COURT:  All right.

22         We'll get this going.  Let's set up a sentencing

23    date.  But, let me tell you -- warn you both -- about one

24    thing, which is I don't continue it forever.  I mean, I'm

25    willing to give the defendant -- usually both the defense

23

1    and the prosecution want some continuance for the

2    cooperation.  And if you don't want to cooperate, I mean,

3    that's totally up to you.  And I'm willing to go along to a

4    certain extent.  But, I've had them go years and I'm not

5    willing to do that anymore.

6              I mean, some people -- you know, they spin out two,

7    three years.  It's just too long.  So --

8              MR. LaPLANTE:  That makes sense to me, your Honor.

9              MR. MILLER:  Certainly.  I think we're in agreement

10   on this one, Judge.

11             THE CLERK:  The sentencing date is June 19th at two

12   p.m.

13             MR. LaPLANTE:  That's good for the government, your

14   Honor.

15             MR. MILLER:  That entire week is free, Judge.

16             THE COURT:  Actually, we'll schedule it for them.

17   I think, unfortunately, due to my children's snow days, I

18   think they were due to get out of school then.  But, I think

19   they're now going to be going to school on the 19th.  So, I

20   think I'm still around.

21             Okay.  That's it.

22             MR. LaPLANTE:  Thank you, your Honor.

23             THE COURT:  All right.

24             MR. MILLER:  Thank you, Judge.

25

CERTIFICATE

I, Marie L. Cloonan, Official Reporter of the
United States District Court, do hereby certify that
the foregoing transcript, from Page 1 to Page 23,
constitutes to the best of my skill and ability a true
and accurate transcription of my stenotype notes taken
in the matter of Criminal No. 00-10331, United States
of America vs. Aaron Barrows.

*Marie L. Cloonan*

# EXHIBIT 4

**CRIMINAL COMPLAINT**

DOCKET NUMBER

**Trial Court of Massachusetts
District Court Department**

COURT DIVISION

JM WEST ROXBURY

NAME, ADDRESS AND ZIP CODE OF DEFENDANT

Aaron Barrows
87 Davison St.
Hyde Park, Ma.

**TO ANY JUSTICE OR CLERK-MAGISTRATE
OF THE DISTRICT COURT DEPARTMENT:**

The within named and undersigned complainant, on behalf of the Commonwealth, on oath complains that on the date and at the location stated herein the defendant did commit the offense(s) listed below.

| DEF. DOB AND SEX | OFFENSE CODE(S) |
| --- | --- |
| 3/2/76 | 817a 216 |

| DATE OF OFFENSE | PLACE OF OFFENSE |
| --- | --- |
| 6/26/95 | 175 Clare Ave. |

| COMPLAINANT | POLICE DEPARTMENT (if applicable) |
| --- | --- |
| Gallagher/9015/A. Murphy | Area E18/CC#50299130 |

| DATE OF COMPLAINT | RETURN DATE AND TIME |
| --- | --- |
| 6/27/95 | ARRESTED |

COUNT-OFFENSE    A.

**817a.POSS. W/INT. TO DISTR. COUNTERFEIT SUB. c94C s32G**

did knowingly or intentionally possess with intent to distribute or dispense a counterfeit substance, in violation of G.L. c.94C, s.32G.

COUNT-OFFENSE

**B.. TRESPASS ON LAND, DWELLING, ETC. c266 s120**

did without right enter or remain in or upon the improved or enclosed land, dwelling house, building, boat, wharf, or pier of another after having been forbidden so to do by the person who had the lawful control of said premises, either directly or by notice posted thereon, or in violation of a court order pursuant to G.L. c.208, s.34B or G.L. c.209A, s.4, in violation of G.L. c.266, s.120.

COUNT-OFFENSE

COUNT-OFFENSE

*Richard F. Walsh*

True copy

| COMPLAINANT | SWORN TO BEFORE CLERK-MAGISTRATE/ASST. CLERK | ON (DATE) | ADDITIONAL COUNTS ATTACHED |
| --- | --- | --- | --- |
| | X | 6-27-95 | |
| FIRST JUSTICE | | | |
| ACTING    JAMES W. DOLAN | COURT ADDRESS | | |
| TRUE COPY    CLERK-MAGISTRATE/ASST. CLERK    ON (DATE) | 445 ARBORWAY | | |
| TEST: X | JAMAICA PLAIN, MA 02130 | | |

## FINDING OF JUDGE-DETERMINATION OF INDIGENCY

After considering the report and recommendation of the probation officer or other appropriate court employee, and after interrogating the defendant named in the complaint on the reverse side, if appropriate, based upon the standards in Supreme Judicial Court Rule 3:10, **I FIND THAT THE DEFENDANT IS:**

☑ **INDIGENT** because the defendant:

     ☐ receives Aid to Families with Dependent Children (AFDC)

     ☐ receives Emergency Aid to Elderly, Disabled and Children (EAEDC).

     ☐ receives poverty-related veterans' benefits.

     ☐ receives food stamps.

     ☐ receives refugee resettlement benefits.

     ☐ receives Medicaid.

     ☐ receives Supplemental Security Income (SSI).

     ☐ is a patient in a mental health facility or treatment center (or is the subject of a proceeding for admission to such a facility) and lacks available funds.

     ☐ is serving a sentence in a correctional institution and has no available funds.

     ☐ is held in custody in a jail and has no available funds.

     ☑ has an annual income, after taxes, 125% or less of the current poverty threshold referred to in G.L. c. 261, § 27A(b).

     ☐ is determined to be indigent pursuant to S.J.C. Rule 3:10, Section 4(b) [Judge's Section 4(b) findings on the record are appended].

☐ **INDIGENT BUT ABLE TO CONTRIBUTE,** and is therefore ordered to pay

     $ _____ toward the cost of counsel because

the defendant:

     ☐ has an annual income, after taxes, of more than 125% and less than 250% of the current poverty threshold referred to in G.L.c. 261, § 27A(b).

     ☐ is charged with a felony within the jurisdiction of the Superior Court and has available funds sufficient to pay a portion of the anticipated cost of counsel.

     ☐ is determined to be indigent but able to contribute pursuant to S.J.C. Rule 3:10, Section 4(b) [Judge's Section 4(b) findings on the record are appended].

☐ **NOT INDIGENT** and is able to pay the anticipated cost of counsel [Judge's findings on the record are appended if this finding is pursuant to S.J.C. Rule 3:10, Section 4(b)].

_____6/27_____         _____
Date                                  District Court Justice

## CERTIFICATE OF JUDGE — WAIVER OF COUNSEL

I hereby certify that the defendant named in the complaint on the reverse side has been informed of his/her right to counsel in accordance with Supreme Judicial Court Rule 3:10 and G.L. c. 211D, §5; that he/she has knowingly elected to proceed without a lawyer; and that he/she has:

     ☐ Executed a waiver of counsel in my presence

     ☐ Refused to sign a waiver

_____         _____
Date                                  District Court Justice

# DOCKET

| DOCKET NUMBER | ATTORNEY NAME | *Therese Azcue 8-14* |
| --- | --- | --- |
| | ☐ Waived | |
| | ☐ Retained | *Paul Keough 100* Rate *8-14* |
| | ☑ Assigned | |

**COURT DIVISION**
JM WEST ROXBURY

**NAME, ADDRESS AND ZIP CODE OF DEFENDANT**

Aaron Barrows
87 Davison St.
Hyde Park, Ma.

**TERMS OF RELEASE**
5000 Rate 500 *8-14*

| DEF. DOB AND SEX | OFFENSE CODE(S) |
| --- | --- |
| 3/2/76 | 817a 216 |

| DATE OF OFFENSE | PLACE OF OFFENSE |
| --- | --- |
| 6/26/95 | 175 Clare Ave. |

| COMPLAINANT | POLICE DEPARTMENT (if applicable) |
| --- | --- |
| Gallagher/9015/A. Murphy | Area E18/CC#50299130 |

| DATE OF COMPLAINT | RETURN DATE AND TIME |
| --- | --- |
| 6/27/95 | ARRESTED |

| DATE | PROCEEDING |
| --- | --- |
| 6/7/95 | ☑ Arraigned before J. *Dolan* |
| | ☑ Advised of right to counsel |
| | ☑ Advised of right to drug exam |
| | ☐ Advised of right to bail review |
| 8.14.95 | ☑ Advised of right to ☑ Jury Trial |
| | ☑ Waives ☐ Requests F.I. Jury Trial |
| 3.14.95 | ☑ Advised of alien rights *Dolan* |
| 7.25.95 | ☐ Warrant issued ☑ Default warrant issued |
| 8-7-95 | ☐ Default removed ☐ Warrant recalled |
| 10-4-95 | ☐ Warrant issued ☑ Default warrant issued |
| 2-23-96 | ☑ Default removed ☑ Warrant recalled |

**COUNT-OFFENSE A.**
817a. POSS. W/INT. TO DISTR. COUNTERFEIT SUB. c94C

| | FINE B/W $.50 fee | SURFINE | COSTS | TOTAL DUE |
| --- | --- | --- | --- | --- |

| DATE 6-27-95 8.14.95 | PLEA ☑ Not Guilty ☐ Guilty ☐ Nolo | IMPRISONMENT AND OTHER DISPOSITION |
| --- | --- | --- |
| | ☐ New Plea: ☐ Admits suff. facts | Probation 8.14.96 |
| FINDING *Guilty* | JUDGE *Dolan* | Probation fee $30 per month Drug Evaluation + Treatment |
| 8.14.95 | | |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION DATE |
| | ☐ Appeal of find. & disp. ☐ Appeal of disp. | ☐ Discharged from probation ☐ Dismissed at request of probation |

**COUNT-OFFENSE**
B. TRESPASS ON LAND, DWELLING, ETC. c266 s120

| | FINE | SURFINE | COSTS | TOTAL DUE |
| --- | --- | --- | --- | --- |

| DATE 6-27-95 | PLEA ☑ Not Guilty ☐ Guilty ☐ Nolo | IMPRISONMENT AND OTHER DISPOSITION |
| --- | --- | --- |
| | ☐ New Plea: ☐ Admits suff. facts | filed |
| FINDING *Guilty* | JUDGE *Dolan* | |
| 8.14.95 | | |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION DATE |
| | ☐ Appeal of find. & disp. ☐ Appeal of disp. | ☐ Discharged from probation ☐ Dismissed at request of probation |

**COUNT-OFFENSE**

| | FINE | SURFINE | COSTS | TOTAL DUE |
| --- | --- | --- | --- | --- |

| DATE | PLEA ☐ Not Guilty ☐ Guilty ☐ Nolo | IMPRISONMENT AND OTHER DISPOSITION |
| --- | --- | --- |
| | ☐ New Plea: ☐ Admits suff. facts | *Richard L. Walsh* |
| FINDING | JUDGE | |
| | | TRUE COPY ATTEST |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION DATE |
| | ☐ Appeal of find. & disp. ☐ Appeal of disp. | ☐ Discharged from probation ☐ Dismissed at request of probation |

**COUNT-OFFENSE**

| | FINE | SURFINE | COSTS | TOTAL DUE |
| --- | --- | --- | --- | --- |

| DATE | PLEA ☐ Not Guilty ☐ Guilty ☐ Nolo | IMPRISONMENT AND OTHER DISPOSITION |
| --- | --- | --- |
| | ☐ New Plea: ☐ Admits suff. facts | |
| FINDING | JUDGE | |
| | ☐ Cont. w/o finding until: | FINAL DISPOSITION DATE |
| | ☐ Appeal of find. & disp. ☐ Appeal of disp. | ☐ Discharged from probation ☐ Dismissed at request of probation |

| CONT. TO | PURPOSE | CONT. TO | PURPOSE | DATE | TAPE NO. | START | STOP |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 7.25.95 | P.T.H. | 2-26-96 | *Sympathy* | 2-23-96 | 814.2 | 2480 | |
| 8-14-95 | P.T.H. | | *Held W/o bail* | FEB 26 1996 | 1236-4 | 239 | 461 |
| 8.14.96 | Probation | | | FEB 26 1996 | 1236-4 | 1669 | 2194 |
| 10-4-95 | *Surrendef* | | | | | | |

| DATE | DOCKET ENTRIES |
|------|----------------|
| 6/27/95 | Cont. 7-18-95 |
| 8-1-95 | Mitt issued JM |
| 8-9-95 | $500 - Cash Bail Rec'd (PM) |
| FEB 26 1996 | After a full prob. surr. heng, VOP Found, prob. revoked, 6 mons. cmtd (conc. w/ 9506 cr 2935. Dolan, J. |
| 2/26/96 | a mitt issued. MB |

True copy attest

Richard R. Welsh

| WAIVER OF JURY TRIAL; DEFENSE COUNSEL'S CERTIFICATE | DOCKET NUMBER | Trial Court of Massachusetts District Court Department |
|---|---|---|

**COURT DIVISION**

W. Roxbury District Court
445 Arborway
Jamaica Plain, Ma. 02130

COMMONWEALTH VS _____

NAME OF DEFENDANT

### WAIVER OF RIGHT TO
### BE TRIED BY JURY
**(G.L. c. 263, s. 6)**

I, the above-named defendant, have been informed of my right to be tried by a jury. I understand that right. I have decided to waive that right.  I have chosen to plead guilty or admit to a finding of guilty.

_8/14/95_
**DATE**

_Aaron Borrows_
**SIGNATURE   OF   DEFENDANT**

### DEFENSE COUNSEL'S
### CERTIFICATE
**(G.L. c. 218, s. 26A)**

I, the undersigned counsel for the above-named defendant in the case captioned above, certify that with regard to the waiver of the right to jury trial, I have explained the following to said defendant:

That the jury consists of members of the community;

That the defendant may participate in their selection;

That the verdict of the jury must be unanimous; and

That the jury must decide guilt or innocence while the judge makes rulings of law in the course of the trial and instructs the jury on the law, and imposes sentence in case of guilt.

_8/14/95_
**DATE**

_Therese Ruhr_
**SIGNATURE OF DEFENSE COUNSEL**

CR 22 (1/94) (reverse)

| TENDER OF PLEA OR ADMISSION | DOCKET NUMBER 95 CR 2935 | Trial Court of Massachusetts District Court Department |
|---|---|---|

**COURT DIVISION**

W. Roxbury District Court
445 Arborway
Jamaica Plain, Ma. 02130

**COMMONWEALTH VS** *Aaron Barros.*
NAME OF DEFENDANT

## TENDER OF PLEA OR ADMISSION

**PART I:** To be completed, where possible, prior to the Pretrial Hearing, subscribed by both counsel and submitted to the court by the defendant at that hearing.

Defendant in this case hereby tenders the following: ☐ PLEA OF GUILTY    ☑ ADMISSION TO FACTS SUFFICIENT FOR A FINDING OF GUILTY

conditioned on the following dispositional terms. [Include **all** proposed terms (guilty finding, finding of sufficient facts, continued without finding, fine, costs, probation, restitution, dismissal, etc.).] Counts/offenses as listed on complaint.

Count/offense 1    *Poss. country. G — 1 yr. prob + drug eval*

Count/offense 2    *Tresp. — G — dis*

Count/offense 3    _____

Count/offense 4    *surrender matter 1 yr. prob*

(Attach an additional sheet, if necessary)

The above-listed terms are submitted for the court's consideration ☐ WITH ☐ WITHOUT the agreement of the Commonwealth.

Signatures:

_____    8/17/95    _____    8/17/95
Defense Counsel    Date    Assistant District Attorney    Date

**PART II:** To be completed by the Court.

### COURT'S RULING

The court ☑ ACCEPTS the Plea/Admission tendered on the terms set forth above, and will impose sentence in accordance with such terms, subject to submission of defendant's written jury waiver (see reverse side), completion of the required colloquy, determination of factual basis and notice of alien rights.

The court ☐ REJECTS the dispositional terms set forth above and, in accordance with Mass. R. Crim. P. 12(c)(6), will set forth the dispositional terms it would find acceptable.

### DEFENDANT'S DECISION UPON REJECTION OF TERMS

Defendant ☐ WITHDRAWS tendered Plea/Admission; Pretrial Hearing to be completed and trial date scheduled, if necessary.

Defendant ☐ ACCEPTS terms set forth by the Court; Plea/Admission to be accepted by court and said dispositional terms imposed, subject to submission of defendant's written jury waiver (see reverse side), completion of the required colloquy, determination of factual basis and notice of alien rights.

_____ Judge

Final dispositional terms to be announced on the record and recorded on case docket sheet.

R 22 (1/94)

tent to manufacture, distribute, or dispense a controlled substance in Class B of section thirty-one to a person under the age of eighteen years shall be punished by a term of imprisonment in the state prison for not less than three nor more than fifteen years. No sentence imposed under the provisions of this section shall be for less than a mandatory minimum term of imprisonment of three years and a fine of not less than one thousand nor more than twenty-five thousand dollars may be imposed but not in lieu of the mandatory minimum term of imprisonment, as established herein.

(c) Any person who knowingly or intentionally manufactures, distributes, dispenses, or possesses with intent to manufacture, distribute, or dispense a controlled substance in Class C of section thirty-one to a person under the age of eighteen years shall be punished by a term of imprisonment in the state prison for not less than two and one-half nor more than fifteen years or in a jail or house of correction for not less than two nor more than two and one-half years. No sentence imposed under the provisions of this section shall be for less than a mandatory minimum term of imprisonment of two years and a fine of not less than one thousand nor more than twenty-five thousand dollars may be imposed but not in lieu of the mandatory minimum two year term of imprisonment, as established herein.

(d) Any person who knowingly or intentionally manufactures, distributes, dispenses, or possesses with intent to manufacture, distribute or dispense a controlled substance as defined in clause (4) of paragraph (a) of class B of section thirty-one, to a person under the age of eighteen years shall be punished by a term of imprisonment in the state prison for not less than five nor more than fifteen years. No sentence imposed under the provisions of this section shall be for less than a minimum term of imprisonment of five years, and a fine of not less than one thousand nor more than twenty-five thousand dollars may be imposed but not in lieu of the mandatory minimum term of imprisonment, as established herein.

Added by St.1980, c. 436, § 4.  Amended by St.1982, c. 650, § 12;  St.1983, c. 571, § 4;  St.1988, c. 125, § 3.

### § 32G.  Counterfeit substances; unlawful creation, distribution, dispensing or possession with intent to distribute or dispense

Any person who knowingly or intentionally creates, distributes, dispenses or possesses with intent to distribute or dispense a counterfeit substance shall be punished by imprisonment in a jail or house of correction for not more than one year or by a fine of not less than two hundred and fifty nor more than two thousand and five hundred dollars, or both such fine and imprisonment.

Added by St.1980, c. 436, § 4.  Amended by St.1982. c. 650, § 13.

### § 32H.  Prosecutions not to be continued or placed on file; suspension or reduction of sentence; eligibility for parole, etc.

A prosecution commenced under paragraph (b) of section thirty-two, paragraphs (b), (c) and (d) of section thirty-two A, paragraph (b) of section thirty-two B, sections thirty-two E thirty-two F and thirty-two J shall not be placed on file or continued without a finding, and the sentence imposed upon a person convicted of violating any provision of said sections shall not be reduced to less than the mandatory minimum term of imprisonment as established in said section, nor shall any sentence of imprisonment imposed upon any person be suspended or reduced until such person shall have served said mandatory minimum term of imprisonment.

A person convicted of violating any provisions of said sections shall not, until he shall have served the mandatory minimum term of imprisonment established, in said sections, be eligible for probation, parole, furlough, work release, or receive any deduction from his sentence for good conduct under sections one hundred and twenty-nine, one hundred and twenty-nine A, one hundred and twenty-nine C and one hundred and twenty-nine D of chapter one hundred and twenty-seven; provided, however, that the commissioner of correction may, on the recommendation of the warden, superintendent, or other person in charge of the correctional institution, grant to said offender a temporary release in the custody of an officer of such institution for the following purposes: to attend the funeral of a relative, to visit a critically ill relative, or to obtain emergency medical or psychiatric services unavailable at said institution. The provisions of section thirty-one of chapter two hundred and seventy-nine shall not apply to any person convicted of violating any provisions of said sections. The provisions of section eighty-seven of chapter two hundred and seventy-six shall not apply to any person, seventeen years of age or over, charged with a violation of said sections, or to any child between age fourteen and seventeen, so charged, if the court is of the opinion that the interests of the public require that he shall be tried for such offense instead of being dealt with as a child.

Added by St.1980, c. 436, § 4.  Amended by St.1982, c. 650, § 14;  St.1988, c. 125, § 4;  St.1989, c. 227, § 1;  St.1989, c. 415.

### § 32*I*.  Drug paraphernalia; sale, possession or manufacture with intent to sell; penalty; sale of tobacco rolling papers

(a) No person shall sell, possess with intent to sell, or manufacture with intent to sell drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or

# **EXHIBIT 5**

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
---------------------------------
UNITED STATES OF AMERICA      :      Cr. No. 00-10331-PBS
                              :
                              :
         v.                   :      Courtroom No. 13
                              :      1 Courthouse Way
                              :      Boston, MA 02210-3002
AARON BARROWS                 :      3:30 p.m., Thursday
---------------------------------     September 20, 2001
```

Disposition Hearing

Before:        THE HONORABLE PATTI B. SARIS,
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

Joseph LaPlante, Assistant United States Attorney,
  1 Courthouse Way, Suite 9200, Boston, MA 02210,
  on behalf of the Government.

R.F. Miller & Associates, (by Rudolph F. Miller, Esquire,),
  555 Amory Street, Jamaica Plain, MA 02130,
  on behalf of the Defendant.

Marie L. Cloonan
Federal Court Reporter
1 Courthouse Way - Room 5209
Boston, MA 02210 - 617-439-7086
Mechanical Steno - Transcript by Computer

2

```
 1                                * * *

 2              THE CLERK:  The case of the United States v. Aaron

 3     Barrows, Criminal Action No. 00-10331, will now be heard

 4     before this Court.

 5              Will counsel please identify themselves for the

 6     record?

 7              MR. LaPLANTE:  Good afternoon, your Honor.  Joseph

 8     LaPlante for the United States.

 9              MR. MILLER:  Good afternoon, Judge.  Rudy Miller

10     representing Aaron Barrows.

11              PROBATION OFFICER SCHROTH:  Good afternoon.  Laura

12     Schroth and Jim Corbo on behalf of the Probation Office.

13              THE COURT:  And?

14              PROBATION OFFICER CORBO:  Jim Corbo.  Sorry, your

15     Honor.  Thank you.

16              THE COURT:  Today, we're here for the sentencing of

17     Mr. Barrows, who is here.  And maybe some family members are

18     here as well?

19              MR. MILLER:  Yes, Judge.

20              THE COURT:  Is that correct?

21              THE DEFENDANT:  Mother, father and stepmother and

22     girlfriend.

23              THE COURT:  Now, I received nothing on this.  I

24     always like to check that because sometimes it takes a few

25     days to get through my docketing system.  So, let me get
```

3

1    from the government, did I receive any motions from you?

2              MR. LaPLANTE:  No, your Honor.

3              THE COURT:  Nothing.

4              Have I received anything from you?

5              MR. MILLER:  Neither here, Judge, no.

6              THE COURT:  Okay.

7              And there were no objections?

8              MR. LaPLANTE:  Not from the government.

9              MR. MILLER:  We believe them to be accurate, Judge.

10             THE COURT:  Okay.

11             So, the way it works, then, is we have a -- I think

12   the career -- he's an armed career criminal -- I mean,

13   career offender.

14             MR. LaPLANTE:  Right.

15             THE COURT:  So, the career offender provisions kick

16   in.  So, it's 31 and six, the total offense level of 31.

17   These are the sentencing guidelines, by the way, I'm

18   referring to.  He had a criminal history category of six,

19   which puts him in at 188 to 235 months of imprisonment, 48

20   to 60 months range of supervised release, $15,000 to $14

21   million fine and a $900 special assessment.  Is that right?

22             PROBATION OFFICER SCHROTH:  Yes, your Honor.

23   That's right.

24             THE COURT:  I wanted to make sure that was correct.

25             Any objections to that range?

4

1    　　　　MR. MILLER:  No objections, Judge.

2    　　　　THE COURT:  All right.

3    　　　　So, basically, what is the government's

4    recommendation?

5    　　　　MR. LaPLANTE:  Your Honor, the government

6    recommends 188 -- at the low end of the guideline range,

7    what we recommended in general, your Honor, which is 188

8    months, followed by a four-year period of supervised

9    release, no fine, and a $900 mandatory special assessment.

10   　　　　THE COURT:  Okay.

11   　　　　MR. MILLER:  Just several points, Judge.

12   　　　　As I stated just previously, your Honor, normally

13   there's some type of submission that we would review at this

14   time.  However, just in reviewing the pre-sentence report,

15   Judge, I find it to be very accurate.  I had one of my

16   brothers review it as well.  I find it to be quite accurate.

17   I've had many occasions to go over it with Mr. Barrows, who

18   did not agree with it.  But, however, we've come to terms on

19   that, and it was accurate.  And we do agree relative to his

20   criminal history and relative to his offense conduct, Judge.

21   And just in support of my brother requesting the low end of

22   the guidelines, Judge, I believe that it is appropriate in

23   this instance for several reasons.

24   　　　　One of those reasons, Judge, is that initially my

25   client accepted responsibility.  And not only accepted

1    responsibility, but he attempted to cooperate with the

2    government.

3        As you are aware, Judge, he's the subject of a

4    potential Rule 35 because he is a percipient witness and has

5    knowledge of some six separate and distinct homicides in the

6    Suffolk County jurisdiction, something which is ongoing,

7    your Honor, and he's eagerly anticipating further

8    cooperation in that light.

9        THE COURT: Let me just say, you're saying this all

10   publicly. So -- is everybody here?

11       MR. MILLER: These folks here are aware of it,

12   Judge. They're aware of it.

13       I've been careful to kind of scurry around

14   particularly on our last occasion in Court, Judge. But this

15   information, the individuals particularly here, are aware of

16   that.

17       Just something else, Judge. The conditions of his

18   pre-trial incarceration have been somewhat burdensome. My

19   client has spent the last five months, plus, in segregation,

20   Judge, for a variety of reasons. However, he has spent the

21   last five months in segregation.

22       THE COURT: I remember there was a problem and we

23   were going to look into it and he needed meds.

24       MR. MILLER: We attempted that. But, if you recall

25   -- and that's one of the requests I'll mlake at this point

6

1   in time.  In asking, making a request of my client, you

2   asked whether or not he felt that that was necessary and he

3   stated "Positively no, Judge."  And I'm somewhat limited by

4   the request.

5   THE COURT:  Well, perhaps I could recommend an

6   institution that had mental health treatment.

7   MR. MILLER:  Exactly.

8   THE COURT:  That might be in order given his

9   history.

10   MR. MILLER:  And that is one of my requests, Judge.

11   I'd be requesting that he be sent to Fort Devens for several

12   reasons, Judge.

13   Just his involvement in the offense conduct, Judge,

14   it deals with drugs and he is an admitted drug user.  He

15   smokes marihuana.  He did smoke marihuana, Judge.  I believe

16   the drug program would be appropriate for him.  And I

17   believe Fort Devens would be appropriate for him for several

18   reasons.  He would be closer to his family and his loved

19   ones.  And, just in terms of his ongoing cooperation, Judge,

20   he would be closer to the authorities, Judge.

21   And, although it's not raised by way of objection,

22   Judge, I will simply add this at this time and I did not

23   raise it by objection because I believe the Probation

24   Department's conclusions to be accurate.

25   I would say this, Judge.  When you examine my

1    client's criminal history, you'll see that he has one very

2    serious offense that's an armed robbery, followed by two

3    other offenses that are not nearly as serious or not quite

4    what you might ordinarily see in a court such as this,

5    Judge.

6        There is a fair argument that can be made that his

7    criminal history may be somewhat overstated by the fact that

8    he's now placed into a career offender's status, Judge.

9        And I would make this oral request that perhaps the

10   Court may see fit to somehow depart based upon that.  But, I

11   chose not to put it in a written motion because I believe

12   that it was accurate and fair and found no other way to get

13   around that.  And I sought out the knowledge of my brothers

14   and sisters and they found no other way to get around that,

15   Judge.  So, I put it on the table orally because his

16   criminal history is scant compared to what you would

17   ordinarily see in this court, Judge.

18       And, at that point in time, Judge, I would simply,

19   again, just request the low end of the sentencing

20   guidelines, Judge, recommendation to the drug program and

21   judicial request to Fort Devens, Judge.

22       THE COURT:  Well, you've taken me by surprise

23   because there has been no written motion for a downward

24   departure.  And I'm not sure whether such a thing is

25   preserved even in the plea agreement.

8

1              MR. LaPLANE:  Technically, your Honor, it's not

2       preserved in the plea agreement.

3              THE COURT:  No, it's waived in the plea agreement.

4              MR. LaPLANTE:  Yeah, it is.  And I don't have an

5       objection to the Court hearing it.

6              THE COURT:  Unless there's a written notice 14 days

7       before sentencing.

8              MR. LaPLANTE:  And the only thought -- but I don't

9       want to sort of breach the plea agreement based on that

10      representation, your Honor.

11             THE COURT:  Well, I just haven't really reviewed

12      his criminal history with that in mind.  I mean, why don't I

13      just take a couple of minutes.

14             MR. MILLER:  Yes, Judge, thank you.

15             THE COURT:  I mean, I'd like a heads-up a little

16      bit.

17             (Pause.)

18             THE COURT:  In 1995, he's convicted and gets two

19      points for possession of crack, which is mere possession it

20      looks like.

21             Then, in 1995, again, he just got a continued

22      without a finding, I guess, for that.  But probation was

23      revoked and he was committed.

24             And, then, he was released on August 9, 1996.  I

25      guess while he was on probation, it looks as if he must have

9

1    -- and I'm trying to do this fast -- he possessed with

2    intent to distribute counterfeit substances, which may have

3    been the reason it was revoked.  I can't quite tell here.

4              Do we know?  It looks it must have been

5    chronologically.

6              PROBATION OFFICER SCHROTH:  I'll check the docket.

7    I have that, your Honor.

8              THE COURT:  Oh, well, maybe not, because, then,

9    later that year, that's when he does the armed robbery.  So,

10   it's possible that was ...

11             It looks as if that's when it was revoked.

12             MR. LaPLANTE:  I understood that to be the reason.

13             THE COURT:  That may be the reason.

14             So, there's an armed robbery with a handgun.

15             They've got now two drug offenses and, then, we're

16   up to armed robbery.

17             While he was there, he got various disciplinary

18   infractions, possession of concealed razorblades, et cetera.

19   I guess he lost privileges.

20             And, then, I guess there's a minor shoplifting.

21             So, that's the gist of it.  Right?

22             MR. MILLER:  That is the gist of it, Judge.

23             THE COURT:  Well, first of all, it's untimely.

24   And, second of all, I guess with a record like that, I'm not

25   prepared to say that it isn't fairly representative.

10

1    Particularly -- the mere possession is nothing.  The

2    possession with intent to distribute -- it says counterfeit

3    substances.  Could that be it?  Like what?

4            MR. LaPLANTE:  Like fake drugs.  Fake drugs, your

5    Honor.

6            THE COURT:  Fake drugs?

7            MR. LaPLANTE:  Yeah.  Sold aspirin like it's, you

8    know, it's something heavier.

9            MR. MILLER:  I would have submitted it by way of

10   submission.  I would have raised it by way of submission,

11   Judge.  However, I could not think of a legitimate basis to

12   contest this, Judge, other than just putting it for your

13   discretion.

14           THE COURT:  Well, I'm going to deny it, but I'm

15   going to go to the low end because I'm particularly

16   concerned that while incarcerated -- this all happened while

17   he was on release and he was also incarcerated when he was

18   involved in some violent disturbances.

19           Is there anything else you wanted to say?  Have you

20   thought about this at all?  I'm a little caught unaware.

21           PROBATION OFFICER SCHROTH:  The criminal history,

22   your Honor?

23           THE COURT:  Yes.

24           PROBATION OFFICER SCHROTH:  No, I didn't think that

25   it was a factor.

11

1       THE COURT:  Did you want to say anything about it?

2       MR. LaPLANTE:  There's no question he's a career

3   offender.  He absolutely fits the description with the drug

4   offense and the armed robbery.

5       In reviewing -- the only thing I am struck by is

6   that there are -- he's in one of those situations when you

7   count up the criminal history points, he gets catapulted up

8   based on being on probation when he committed a crime and

9   being on release from something else.  And his numbers go up

10   to a Level 5 anyway.  Because he's a career offender, he's a

11   Category 6.

12       I'm accustomed to seeing many more infractions in a

13   career offender, but he's, no doubt, a career offender.  I

14   guess what -- I'll say this, your Honor --

15       THE COURT:  Well, do you want to agree to go down

16   to a 5?

17       MR. LaPLANTE:  I'll say it this way.  I don't think

18   --

19       THE COURT:  Don't do this to me.

20       MR. LaPLANTE:  Okay.

21       THE COURT:  Agree or don't.

22       MR. LaPLANTE:  I agree with your Honor.

23       THE COURT:  You agree to go to a 5?

24       MR. LaPLANTE:  I agree to go to a sentence that

25   there's a Category 5, which is 168 months low end.

Case 1:05-cv-10361-PBS    Document 15-6    Filed 03/03/2006    Page 13 of 22

12

1      MR. MILLER:  No objection, Judge.

2      THE COURT:  Okay.

3      On the 4A1.1 --

4      MR. LaPLANTE:  4A1.3, your Honor.

5      THE COURT:  -- 1.3.

6      MR. LaPLANTE:  Yeah.  Subsection E.  Or, I should

7  say the paragraphs follow in subsection, your Honor.

8      THE COURT:  All right.

9      Does Probation want to say anything about that or

10 take a position one way or another?

11     PROBATION OFFICER SCHROTH:  No, your Honor.

12     THE COURT:  I think I have discretion under the

13 current case law to do it.  Although, that area is a bit in

14 flux.

15     MR. LaPLANTE:  I think you do have the discretion.

16     The one thing I'd put on the record is this, your

17 Honor, about my agreement to go to a Category 5 -- is that

18 you might recall that this was a case where we did a

19 pre-plea -- a pre-plea --

20     THE COURT:  Yes.

21     MR. LaPLANTE:  -- PSR.  And that was because there

22 was a serious question to my mind and to defense counsel's

23 mind as to whether he was a career offender.  So, it was a

24 borderline case.

25     So, under those circumstances, I don't have an

13

1    objection to going down to Category 5, low end.

2            THE COURT:  That would be a 31 at 5.

3            MR. LaPLANTE:  A hundred and sixty-eight months,

4    your Honor.

5            THE COURT:  But, you're still at 168, right, low

6    end?

7            MR. LaPLANTE:  Yes, your Honor.

8            THE COURT:  No objection, I take it?

9            MR. LaPLANTE:  None whatsoever, Judge.

10            THE COURT:  But, you know what?  Give me a heads-up

11    next time.

12            MR. MILLER:  We examined it front to back, Judge.

13    By our calculations, he was a career offender.

14            THE COURT:  Well, he is.

15            Low end, supervised -- did you want to say

16    anything?

17            THE DEFENDANT:  Yes.  I would like to apologize to

18    the Court for my role in these crimes.  Actually, I'm the

19    only person in these crimes.

20            THE COURT:  Say it again?  I just missed it.

21            THE DEFENDANT:  Yeah.  I would like to apologize

22    for all the --

23            THE COURT:  You know, I could probably hear you.

24    That's all right.

25            THE DEFENDANT:  -- all the counts -- the crimes

14

1    that I was involved with, the drug-selling in the Plymouth

2    area, and just apologize to this Court for me even being

3    here, you know.  Because, in a sense, I feel, you know,

4    there could have been other ways I could have went about

5    earning money or -- it was just -- it was total, some -- I

6    don't know.

7            THE COURT:  Why don't you tell me who's here?

8    You're turning around.  Who's here for you?

9            THE DEFENDANT:  My mother, my stepmother, my father

10   and my girlfriend.

11           And it's like, you know, I just made a lot of wrong

12   decisions and I would like to apologize to everyone here.

13   And, hopefully, when this time is done that I'll be able to

14   function under the law without no problems with violence or

15   drugs or anything.  Just --

16           THE COURT:  Let me say this.  The problem -- the

17   one thing that held me back, and I was most worried about,

18   is the armed robbery is very serious.  Possession with

19   intent to distribute isn't as serious, but it's serious.

20   What really worried me is the consistent problems you were

21   getting into in the disciplinary section, with the

22   razorblades and all that.  So, you understand, I've got

23   three marshals here.  I don't always have three marshals

24   here.  They're worried about you.  I remember that from the

25   last time.

15

1          THE DEFENDANT:  You're right, your Honor.

2          THE COURT:  And I see why.

3          What you need to do is get your life together

4     because, even the 168, the graciousness, you know, that the

5     government didn't oppose that, was in my discretion --

6          THE DEFENDANT:  Right.

7          THE COURT:  -- it's going to be awful for you,

8     those next 168 months, unless --

9          THE DEFENDANT:  Right.

10          THE COURT:  -- you get your act together in prison.

11     I'm going to recommend an institution with mental health

12     counseling and substance abuse.  But, essentially, this is ·

13     up to you.

14          THE DEFENDANT:  Right, your Honor.

15          Like I was saying, you know, if you deal with the

16     emotions and like I essentially put myself in this situation

17     and, like, I'm like -- I wouldn't say like -- almost in like

18     denial.  Not that the fact that I'm guilty of thee charges,

19     but denial of the fact that, you know, that I have to do

20     this, you know?  And people deal with stress in different

21     ways, you know?  I may, you know -- I may just fly off the

22     handle just by an officer, you know, saying something smart

23     to me, you know?  I mean, my feelings -- I understand

24     totally that at this moment I'm a convicted felon.  But I

25     also feel that I'm a man.  And as far as me to take any

16

1    like, you know ...

2         You're right, your Honor.  I do need --

3         THE COURT:  Well, I imagine every day of every week

4    there's probably something that happens --

5         THE DEFENDANT:  Right.

6         THE COURT:  -- that you'd get upset about.

7         THE DEFENDANT:  And I'm simply saying, as I was

8    flipping quickly through this record -- because I had no --

9    I hadn't focused on it because it wasn't a joined issue, the

10   thing that worried me the most was the armed robbery and

11   selling the crack and all that's pretty bad -- but the

12   concern about recidivism is I'm seeing it even in the prison

13   setting.  You've got to clean up your act or you're going to

14   have 168 really bad months, just like the last five.

15        And I'm concerned.  And I was going to ask about

16   what you suggest for conditions -- what will help you get

17   back into the world when you get back after 168 months?

18        THE DEFENDANT:  I have no idea, really, to tell you

19   the truth.  I mean, this is how I lived my life since I was

20   five years old, you know?  So, for me to just come up here

21   to give you an answer, I'll be lying to you, because -- I

22   mean, I actually --

23        THE COURT:  Maybe counsel can help me.  I mean, I

24   put down substance abuse testing and counseling, mental

25   health treatment.  What's going to help?  Because, it's

17

1    clear that he just needs a structured way.  He's got to live

2    a life.  But, the next time, someone's going to throw away

3    the key.

4         MR. MILLER:  This has been one of the toughest

5    cases for me to deal with, personally, Judge.  There have

6    been many occasions, not even many -- but several occasions

7    when I came in this Court ready to withdraw and to get off

8    this case.  But, I just could not abandon this guy.

9         When I'd go down to Wyatt and I'd see that he only

10   had one or two visits for this entire year that he's been

11   incarcerated, Judge.  And these sort of programs that

12   provide some sort of structure in his life, this is a guy

13   who's basically a defendant who's been basically -- when I

14   just say it, just on my observation -- has been raising

15   himself, Judge.  And he's been raising himself in the

16   streets, your Honor.  This is going to provide him with an

17   opportunity for some reflection.  But he needs some type of

18   tightly controlled program that would instill some

19   parameters in his life.

20        THE COURT:  Does he have work skills?

21        THE DEFENDANT:  Yes, yes.

22        THE COURT:  What do you do?

23        THE DEFENDANT:  Actually, I'm an apprentice

24   electrician.  But, you know, obviously I chose something

25   other than that.

18

1            THE COURT:   What do you suggest?   Some structured

2   way when he comes back into the community.

3            PROBATION OFFICER SCHROTH:   Your Honor, I think

4   being on supervision with the drug and mental health

5   treatment provides -- there's different programs that are

6   involved in that and I think that will allow the probation

7   officer discretion.

8            The only other special condition, which I don't

9   think it would be helpful, is community service where I

10  think the individual officer could work --

11           THE COURT:   Why don't I just say get a full-time

12  job, support yourself.

13           PROBATION OFFICER SCHROTH:   And that's a part of

14  the standard conditions anyway.

15           THE COURT:   Yes.   Okay.   All right.   Thank you.

16           THE DEFENDANT:   Thank you.

17           THE COURT:   Did I cut you off?   Do you want to say

18  anything else?

19           THE DEFENDANT:   No, that's it.

20           THE COURT:   Anything?   All right.

21           This is what I'm going to do.   By agreement with

22  the government, I'm going to impose a sentence of 168 months

23  of imprisonment.

24           And how much time served?   You've got to come up

25  with a certain number so we can put that on the judgment.

19

1   It's going to be roughly five months.

2           MR. LaPLANTE:  I can give you the day of his

3   arrest, your Honor.

4           THE DEFENDANT:  September.

5           PROBATION OFFICER SCHROTH:  Since September 13th of

6   2000 to the present, he has been detained in federal

7   custody.

8           THE COURT:  With credit --

9           MR. LaPLANTE:  That's a year and a week

10          THE COURT:  Wow.  All right.  With credit from

11  9-13-2000.  So, 168 months of imprisonment, 48 months of

12  supervised release, no fine, because I don't think you could

13  pay it, and a $900 special assessment, which is mandatory.

14  Conditions upon release that he procure a full-time job, get

15  mental health treatment and substance abuse testing and

16  counseling.

17          If they think you need drugs, try it.  There's

18  obviously something going on with this anger.  And I -- as I

19  said, I hope that Fort Devens will be available.  But, if

20  not, I really think it should be -- I'll make a

21  recommendation for a place with drug and mental health

22  treatment.

23          MR. LaPLANTE:  I think I should put on the record

24  now that I need to recommend Fort Devens, but I'm almost

25  positive he's not eligible.

20

1          THE COURT:  He may not be.  But, I think he does

2     need this extra programming.

3          All right.  Nothing else?

4          MR. MILLER:  Nothing further, Judge.

5          THE COURT:  Mr. Alba, read just the appeal.

6          THE CLERK:  Will the defendant please stand.

7          Mr. Aaron Barrows, the Court hereby notifies you of

8     your right to appeal this sentence.  If you cannot afford

9     the cost of an appeal, you may move to proceed in forma

10    pauperis.  If you cannot afford counsel for an appeal, one

11    will be appointed for you.

12         You are also notified that the clerk of court will

13    file an appeal on your behalf, if requested by you to do so.

14    Any appeal from this sentence must be filed within ten days

15    of entry of judgment on the docket.

16         Do you understand these rights?

17         THE DEFENDANT:  Yes, sir.

18         THE CLERK:  Thank you.

19         MR. MILLER:  Thank you for your discretion, Judge.

20         (Whereupon the hearing was concluded.)

21

22

23

24

25

## CERTIFICATE

I, Marie L. Cloonan, Official Reporter of the
United States District Court, do hereby certify that
the foregoing transcript, from Page 1 to Page 20,
constitutes to the best of my skill and ability a true
and accurate transcription of my stenotype notes taken
in the matter of Criminal No. 00-10331, United States
of America vs. Aaron Barrows.

*Marie L. Cloonan*

# **EXHIBIT 6**

AO 245B (Rev. 3/01) Sheet 1 - Judgment in a Criminal Case

# United States District Court

## District of Massachusetts

UNITED STATES OF AMERICA
v.
**AARON BARROWS**

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

**Case Number:  1: 00-10331-PBS**

Rudolph F. Miller, Esq.
Defendant's Attorney

## THE DEFENDANT:

[x] pleaded guilty to count(s): 1 through 9 of a 9 count Indictment
[ ] pleaded nolo contendere to counts(s)_____ which was accepted by the court.
[ ] was found guilty on count(s)_____ after a plea of not guilty.

Accordingly, the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 USC §841(a)(1) | Possession with Intent to Distribute, and Distribution of Cocaine Base. | 10/14/99 | 1 |
| | | 10/27/99 | 2 |
| | | 05/02/00 | 3 |
| | | 05/04/00 | 4 |
| | | 05/09/00 | 5 |
| | | [x] See continuation page | |

The defendant is sentenced as provided in pages 2 through _7_ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ] The defendant has been found not guilty on counts(s)_____ and is discharged as to such count(s).

[ ] Count(s) _____ is  dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

Defendant's Soc. Sec. No.: 024/66/5223

Defendant's Date of Birth:  3/2/76

Defendant's USM No.: 23282-038

Defendant's Residence Address:
67 Davidson Street
Hyde Park, MA

Defendant's Mailing Address:
Donald W. Wyatt Detention Facility
950 High Street
Central Falls, RI 02865

09/20/01
Date of Imposition of Judgment

Signature of Judicial Officer

The Honorable Patti B. Saris
Name and Title of Judicial Officer

Judge, U.S. District Court

Date
9/25/01

DOCKETED

Continuation Page - Judgment in a Criminal Case

CASE NUMBER: 1: 00-10331-PBS
DEFENDANT:    AARON BARROWS

Judgment - Page 2   of   7

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 USC § 841(a)(1) | Possession with Intent to Distribute, and Distribution of Cocaine Base. | 05/17/00 | 6 |
| | | 05/31/00 | 7 & 8 |
| | | 06/12/00 | 9 |

AO 245B (Rev. 3/01)  Sheet 2 - Imprisonment

CASE NUMBER: 1:00-10331-PBS
DEFENDANT: AARON BARROWS

Judgment - Page   3  of   7

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of      168    month(s)

Defendant should be given credit for Federal incarceration since 09/13/2000

☒  The court makes the following recommendations to the Bureau of Prisons:

A judicial recommendation to a FCI with drug and mental health treatment, ideally Fort Devens.

☒  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:
    ☐ at _____ on _____
    ☐ as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
    ☐ before _____  on _____
    ☐ as notified by the United States Marshal.
    ☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
Deputy U.S. Marshal

AO 245B (Rev. 3/01) Sheet 3 - Supervised Release

CASE NUMBER:  1:00-10331-PBS
DEFENDANT: AARON BARROWS

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of    48    month(s)

[X] See continuation page

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

[  ]    The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check if applicable.)

[X]    The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page (if indicated above).

## STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without the permission of the court or probation officer;
2)  the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4)  the defendant shall support his or her dependants and meet other family responsibilities;
5)  the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)  the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)  the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Continuation Page - Supervised Release/Probation

CASE NUMBER: 1:00-10331-PBS

Judgment - Page   5 of   7

DEFENDANT: AARON BARROWS

## Continuation of Conditions of [x] Supervised Release ☐ Probation

The Defendant shall procure full time employment.

The Defendant shall participate in subatance abuse treatment and counseling.

The Defendant shall participate in mental health treatment.

AO 245B    (Rev. 3/01) Judgment in a Criminal Case
            Sheet 5, Part A — Criminal Monetary Penalties

Judgment - Page 6 of 7

CASE NUMBER:  1: 00-10331-PBS
DEFENDANT: AARON BARROWS

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $900.00 | | |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid in full prior to the United States receiving payment.

| Name of Payee | *Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| | | | |
| TOTALS | $0.00 | $0.00 | |

☐ See Continuation Page

☐ If applicable, restitution amount ordered pursuant to plea agreement _____

☐ The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine and/or   ☐ restitution.

☐ the interest requirement for the   ☐ fine and/or   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994 but before April 23, 1996

AO 245B    (Rev. 3/01) Judgment in a Criminal Case
Sheet 5, Part B — Criminal Monetary Penalties

Judgment - Page  7  of  7

CASE NUMBER:  1: 00-10331-PBS
DEFENDANT: AARON BARROWS

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A ☐ Lump sum payment of _____ due immediately, balance due

☐ not later than _____ , or
☐ in accordance with ☐ C, ☐ D, or ☐ E below; or

B ☒ Payment to begin immediately (may be combined with C, D, or E below); or

C ☐ Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise in the special instruction above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court, unless otherwise directed by the court, the probation officer, or the United States attorney.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Case Number, Defendant Name, and Joint and Several Amount:

☐ See Continuation Page

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest (7) penalties, and (8) costs, including cost of prosecution and court costs.

# **EXHIBIT 7**

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

**MANDATE**

FILED
IN CLERKS OFFICE

2002 FEB 26 P 5: 53

U.S. DISTRICT COURT
DISTRICT OF MASS.

No. 01-2372

UNITED STATES,
Appellee,

v.

AARON BARROWS,
Defendant, Appellant.

*Record returned*

## ORDER OF COURT

ENTERED: February 1, 2002

On November 19, 2001 and December 20, 2001, this court issued an orders and directed the appellant to either pay the filing fees of $105.00 to the district court, or to file a motion and financial affidavit for in forma pauperis status in the district court, and to respond to this court in writing by January 10, 2002. This court notified appellant that failure to take any action could result in this appeal being dismissed in accordance with Local Rules 3(b).

A review of the district court docket does not reflect the payment of the filing fees, or the docketing of an application to proceed in forma pauperis, nor did the appellant respond to this court in writing. This appeal, therefore, is dismissed for lack of prosecution in accordance with Local Rules 3(b).

By the Court:

Richard Cushing Donovan, Clerk

JANICE M. O'NEIL

Certified and Issued
as mandate under
Fed. R. App. P 41

By: _____
Chief Deputy Clerk

Clerk

Chief Deputy Clerk

[cc: Messrs. Barrows, Miller Laplante, Vien, Ms. Chaitowitz]

# United States Court of Appeals COPY
## For the First Circuit

---

No. 01-2372

UNITED STATES,

Appellee,

v.

AARON BARROWS,

Defendant, Appellant.

---

Before

Boudin, <u>Chief Judge</u>,
Torruella and Selya, <u>Circuit Judges</u>.

---

ORDER OF COURT

Entered: December 6, 2004

Aaron Barrows has filed a motion to recall mandate. In an order dated September 21, 2004, we denied Barrows' request to reinstate his right to appeal, which we construed as a motion to recall mandate. Nothing Barrows has stated in his present motion calls into question the correctness of either that order or our order dated February 1, 2002, dismissing Barrows' appeal for lack of jurisdiction. The motion to recall mandate is <u>denied</u>.

By the Court:

Richard Cushing Donovan, Clerk.

By: _____
　　　　　　Chief Deputy Clerk.

# **EXHIBIT 8**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Civil Action
No: 03-10217-PBS

### AARON BARROWS
Petitioner

v.

### UNITED STATES OF AMERICA
Respondent

## ORDER OF DISMISSAL

SARIS, D.J.

    In accordance with this Court's allowance of the Petitioner's withdrawal of his Motion Under 28 U.S.C. Section 2255 on March 25, 2003, it is hereby ORDERED that the above-entitled action be and hereby is dismissed.

By the Court,

_____
Deputy Clerk

March 26, 2003

To: All Counsel

